**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

Case No. 19-cv-6483 (RA)

*In re Teekay Offshore Partners, L.P. Common Unitholders Litigation*

**ORAL ARGUMENT REQUESTED**

# MEMORANDUM IN SUPPORT OF DEFENDANTS BROOKFIELD ASSET MANAGEMENT INC.'S, BROOKFIELD BUSINESS PARTNERS, L.P.'S, AND THE INDIVIDUAL BROOKFIELD DEFENDANTS' MOTION TO DISMISS

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................. 1

BACKGROUND ..................................................................................................... 2

    A.    The Partnership and Its Deteriorating Business. ..................................... 2

    B.    Brookfield Provides Financial Support and Acquires a Majority in TKO. ........... 3

    C.    The Merger with TKO. ....................................................................... 4

ARGUMENT .......................................................................................................... 6

I.    THIS COURT LACKS PERSONAL JURISDICTION. ................................... 6

    A.    There Is No Basis for Exercising Jurisdiction as a Matter of Law. ....... 7

    B.    Plaintiffs Lack Standing to Invoke the Contractual Forum Selection Clauses. ........................................................................................ 11

II.    PLAINTIFFS' CLAIMS SHOULD BE DISMISSED ON THE MERITS. ............ 11

    A.    Counts I & II: Plaintiffs' Breach of Contract Claim Must Be Dismissed. ........... 11

        1.    The Brookfield Defendants Cannot Breach the LPA. ............... 12

        2.    The Merger Received Special Approval. .................................. 12

        3.    There Was No Breach of LPA § 7.9(b). .................................. 13

    B.    Count III: Plaintiffs Fail to Plead an Implied Covenant Claim. .......... 16

        1.    The Conflicts Committee Was Validly Constituted. ............... 20

        2.    The Retention of Potter Cannot Invalidate the Special Approval Process. ........................................................................... 21

        3.    Periodic Updates Do Not Breach the Implied Covenant. ......... 21

        4.    Evercore Was Not Conflicted. ................................................ 22

    C.    Counts V and VI: There Are No Fiduciary Duties under the LPA ...... 22

    D.    Count IV: Plaintiffs' Tortious Interference Claim Fails under New York Law. ............................................................................ 24

CONCLUSION ..................................................................................................... 25

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Allen v. El Paso Pipeline GP Co., L.L.C.,*
113 A.3d 167 (Del. Ch. 2014)............................................................12, 16, 23

*Am. Federated Title Corp. v. GFI Mgmt. Servs., Inc.,*
716 Fed. Appx. 23 (2d Cir. 2017) ..........................................................14

*Am. Protein Corp. v. AB Volvo,*
844 F.2d 56 (2d Cir. 1988), *cert. denied* 488 U.S. 852 (1988)..............................25

*Antares Aircraft L.P. v. Total C.F.P.,*
Case No. 90-cv-5003, 1991 WL 19997 (S.D.N.Y. Feb. 7, 1991), *aff'd*, 948
F.2d 1275 (2d Cir. 1991)............................................................................7

*ARS Kabirwala, LP v. El Paso Karbirwala Cayman Co.,*
1:16-cv-6430, 2017 WL 3396422 (S.D.N.Y. Aug. 8, 2017) ................................16

*ASB Allegiance Real Estate Fund v. Scion Breckenridge Managing Member, LLC,*
50 A.3d 434 (Del. Ch. 2012), *rev'd on other grounds* 68 A.3d 665 (Del. 2013) ...................18

*AVRA Surgical Robotics, Inc. v. Gombert,*
41 F. Supp. 3d 350 (S.D.N.Y. 2014)..........................................................8

*Beacon Enters., Inc. v. Menzies,*
715 F.2d 757 (2d Cir. 1983)..................................................................10

*Best Van Lines, Inc. v. Walker,*
490 F.3d 239 (2d Cir. 2007)..................................................................7

*Black v. Anheuser-Busch In Bev,*
220 F. Supp. 3d 443 (S.D.N.Y. 2016)..........................................................12

*Blackmore Partners, L.P. v. Link Energy LLC,*
C.A. No. 454, 2005 WL 2709639 (Del. Ch. Oct. 14, 2005), *abrogated on
other grounds by Quadrant Structured Prods. Co., Ltd. v. Vertin*, 115 A.3d
535 (Del. Ch. 2015) ..........................................................................21

*Brinckerhoff v. Enbridge Energy Co., Inc.,*
159 A.3d 242 (Del. 2017)....................................................................23

*Bristol-Myers Squibb Co. v. Sup. Ct. of Cal., San Francisco Cty.,*
137 S. Ct. 1773 (2017)....................................................................7, 10

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462 (1985)..................................................................................10

*Cargill, Inc. v. Charles Kowsky Res., Inc.*,
    949 F.2d 51 (2d Cir. 1991)........................................................................11

*Cent. Mortg. Co. v. Morgan Stanley Mortg. Capital Holdings. LLC*,
    27 A.3d 531 (Del. 2011) ...........................................................................17

*Chassman v. Bezzabeh*,
    Case No. 1:15-cv-4869, 2016 WL 7174669 (S.D.N.Y. Dec. 7, 2016) .....................7

*Comprehensive Habilitation Servs., Inc. v. Commerce Funding Corp.*,
    Case No. 05-cv-9640, 2009 WL 935665 (S.D.N.Y. Apr. 7, 2009) ........................16

*Cont'l Indus. Grp., Inc. v. Equate Petrochem. Co.*,
    586 F. App'x 768 (2d Cir. 2014) ...............................................................7

*Conte v. Emmons*,
    895 F.3d 168 (2d Cir. 2018)......................................................................25

*Daimler AG v. Bauman*,
    571 U.S. 117 (2014)..............................................................................7, 9

*In re Del Valle Ruiz*,
    342 F. Supp. 3d 448 (S.D.N.Y. 2018), *aff'd*, 939 F.3d 520 (2d Cir. 2019) ...............7

*Dunlap v. State Farm Fire & Cas. Co.*,
    878 A.2d 434 (Del. 2005) .........................................................................19

*Edinburgh Holdings, Inc. v. Educ. Affiliates, Inc.*,
    C.A. No. 0500, 2018 WL 2727542 (Del. Ch. June 6, 2018) ..............................17

*Emps. Ret. Sys. of City of St. Louis v. TC Pipelines GP, Inc.*,
    C.A. No. 11603, 2016 WL 2859790 (Del. Ch. May 11, 2016) ...........................16

*In re Encore Energy Partners LP Unitholder Litig.*,
    C.A. No. 6347, 2012 WL 3792997 (Del. Ch. Aug. 31, 2012)..............................18

*Fin. One Pub. Co. Ltd. v. Lehman Bros. Special Fin., Inc.*,
    414 F.3d 325 (2d Cir. 2005)......................................................................24

*First Hill Partners, LLC v. BlueCrest Capital Mgmt Ltd.*,
    52 F. Supp. 3d 625 (S.D.N.Y. 2014)...........................................................24

*Fisk Ventures, LLC v. Segal*,
    C.A. No. 3017, 2008 WL 1961156 (Del. Ch. May 7, 2008) ..............................19

*Foster v. Churchill*,
    87 N.Y.2d 744 (N.Y. 1996) ...................................................................................24

*Frank v. P N K (Lake Charles) L.L.C.*,
    947 F.3d 331 (5th Cir. 2020) ....................................................................................7

*Gerber v. Enter. Prods. Holdings, LLC*,
    67 A.3d 400 (Del. 2013), *overruled in part on other grounds by Winshall v.
    Viacom Int'l, Inc.*, 76 A.3d 808 (Del. 2013) .........................................................18

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
    564 U.S. 915 (2011) ..................................................................................................7

*Gotham Partners, L.P. v. Hallwood Realty Partners, L.P.*,
    817 A.2d 160 (Del. 2002) ...................................................................................12, 23

*Gotham Partners, L.P. v. Hallwood Realty Partners, L.P.*,
    C.A. No. 15754, 2000 WL 1476663 (Del. Ch. Sept. 27, 2000), *rev'd in part
    on other grounds*, 817 A.2d 160 ...........................................................................22

*H-M Wexford LLC v. Encorp, Inc.*,
    832 A.2d 129 (Del. Ch. 2003)..................................................................................12

*Hastings v. Piper Aircraft Corp.*,
    84 N.Y.S.2d 580 (N.Y. App. Div. 1948) ................................................................10

*Int'l Customs Assocs., Inc. v. Ford Motor Co.*,
    893 F. Supp. 1251 (S.D.N.Y. 1995), *aff'd*, 201 F.3d 431 (2d Cir. 1999) ...............10

*Jazini v. Nissan Motor Co., Ltd.*,
    148 F.3d 181 (2d Cir. 1998)......................................................................................7

*Johnson v. UBS AG*,
    791 Fed. App'x 240 (2d Cir. 2019)..........................................................................10

*Kahn Lucas Lancaster, Inc. v. Lark Int'l Ltd.*,
    956 F. Supp. 1131 (S.D.N.Y. 1997).........................................................................10

*Kalb, Voorhis & Co. v. Am. Fin. Corp.*,
    8 F.3d 130 (2d Cir. 1993).........................................................................................13

*In re Kinder Morgan*,
    2015 WL 4975270 ...................................................................................................12

*Klaxon Co. v. Stentor Elec. Mfg. Co.*,
    313 U.S. 487 (1941)..................................................................................................11

*Kuroda v. SPJS Holdings, L.L.C.*,
   971 A.2d 872 (Del. Ch. 2009) ..........................................................................19

*Lee v. Pincus*,
   C.A. No. 8458, 2014 WL 6066108 (Del. Ch. Nov. 14, 2014) .................................24

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
   299 F. Supp. 3d 430 (S.D.N.Y. 2018) ................................................................16

*In re Martha Stewart Living Omnimedia, Inc. Stockholder Litig.*,
   C.A. No. 11202, 2017 WL 3568089 (Del. Ch. Aug. 18, 2017) .............................22

*Medline Indus. Inc. v. Maersk Med. Ltd.*,
   230 F. Supp. 2d 857 (N.D. Ill. 2002) .................................................................17

*Megna v. Biocomp Labs. Inc.*,
   166 F. Supp. 3d 493 (S.D.N.Y. 2016) ..................................................................8

*Mendel v. Henry Phipps Plaza W., Inc.*,
   16 A.D. 3d 112 (N.Y. App. Div. 2005) ...............................................................11

*NCA Holding Corp. v. Ernestus*,
   Case No. 97-cv-1372, 1998 WL 388562 (S.D.N.Y. July 13, 1998) ......................10

*Nemec v. Shrader*,
   991 A.2d 1120 (Del. 2010) ...............................................................................19

*Nepco Forged Prods., Inc. v. Consol. Edison Co. of N.Y., Inc.*,
   470 N.Y.S.2d 680 (N.Y. App. Div. 1984) ...........................................................11

*Netherland Shipmortg. Corp., Ltd. v. Madias*,
   717 F.2d 731 (2d Cir. 1983) .............................................................................10

*Norton v. K-Sea Transp. Partners L.P.*,
   67 A.3d 354 (Del. 2013) ...................................................................................16

*In re Optimal U.S. Litig.*,
   Case No. 10-cv-4095, 2011 WL 4908745 (S.D.N.Y. Oct. 14, 2011) ....................14

*Pac. Gas & Elec. Co. v. Bear Stearns & Co.*,
   50 Cal. 3d 1118 (Cal. 1990) .............................................................................24

*Poms v. Dominion Diamond Corp.*,
   Case No. 655733/2017, 2019 WL 2106090 (N.Y. Sup. Ct. May 15, 2019) .........8, 10

*Robinson v. Overseas Military Sales Corp.*,
   21 F.3d 502 (2d Cir. 1994) .................................................................................7

*Sadesky v. Liberty Chevrolet, Inc.*,
    Case No. 04-cv-1894, 2005 WL 1026326 (S.D.N.Y. May 3, 2005) .........................................7

*Shea v. Hambro Am. Inc.*,
    200 A.D.2d 371 (N.Y. App. Div. 1994) ...............................................................25

*Sonera Holding B.V. v. Cukurova Holding A.S.*,
    750 F.3d 221 (2d Cir. 2014).......................................................................9

*Sonet v. Timber Co., L.P.*,
    722 A.2d 319 (Del. Ch. 1998)....................................................................22

*Soviet Pan Am Travel Effort v. Travel Comm., Inc.*,
    756 F. Supp. 126 (S.D.N.Y. 1991) ...............................................................14

*SPV Osus Ltd. v. UBS AG*,
    882 F.3d 333 (2d Cir. 2018)......................................................................10

*SPV Osus Ltd. v. UniCredit Bank Austria*,
    Case No. 18-cv-3497, 2019 WL 1438163 (S.D.N.Y. Mar. 30, 2019) ......................................8

*Stormhale, Inc. v. Baidu.com, Inc.*,
    675 F. Supp. 2d 373 (S.D.N.Y. 2009).............................................................8

*Sullivan v. Walker Constr., Inc.*,
    Case No. 18-cv-09870, 2019 WL 2008882 (S.D.N.Y. May 7, 2019) ......................................7

*In re Thelen LLP*,
    736 F.3d 213 (2d Cir. 2013).....................................................................24

*Tianbo Huang v. iTV Media, Inc.*,
    13 F. Supp. 3d 246 (E.D.N.Y. 2014) ..........................................................13, 14

*Transasia Commodities Ltd. v. Newlead JMEG, LLC*,
    Case No. 654414/2013, 2014 WL 6091958 (N.Y. Sup. Ct. Nov. 13, 2014) .....................8, 10

*Tyco Int'l Ltd. v. Walsh*,
    455 Fed. App'x 55 (2d Cir. 2012)................................................................14

*United States v. Bestfoods*,
    524 U.S. 51 (1998)..............................................................................13

*Vichi v. Koninklijke Philips Elecs. N.V.*,
    62 A.3d 26 (Del. Ch. 2012).....................................................................12

*Walden v. Fiore*,
    571 U.S. 277 (2014)............................................................................10

*Wellington Shields & Co. LLC v. Breakwater Inv. Mgmt. LLC*,
   Case No. 14-cv-7529, 2016 WL 5414979 (S.D.N.Y. Mar. 18, 2016) ...................................25

*Wenske v. Blue Bell Creameries, Inc.*,
   C.A. No. 0699, 2018 WL 3337531 (Del. Ch. July 6, 2018) ...................................................23

*Wenske v. Blue Bell Creameries, Inc.*,
   C.A. No. 0699, 2018 WL 5994971 (Del. Ch. Nov. 13, 2018) ..........................................12, 13

*White Plains Coat & Apron Co., Inc. v. Cintas Corp.*,
   8 N.Y.3d 422 (N.Y. 2007) ..................................................................................................25

*White Plains Coat & Apron Co. v. Cintas Corp., Inc.*,
   460 F.3d 281 (2d Cir. 2006) ...............................................................................................24

*Wilson v. Dantas*,
   746 F.3d 530 (2d Cir. 2014) ................................................................................................11

*Wolfson v. Conolog Corp.*,
   Case No. 08-cv-3790, 2009 WL 465621 (S.D.N.Y. Feb. 25, 2009) .......................................8

*Zimmerman v. Crothall*,
   C.A. No. 6001, 2012 WL 707238 (Del. Ch. Mar. 5, 2012) ..................................................23

**Statutes**

Delaware Revised Uniform Limited Partnership Act ............................................................ *passim*

Marshall Islands Limited Partnership Act ........................................................................... *passim*

**Other Authorities**

Wright & Miller, 9A Fed. Prac. & Proc. Civ. § 2444 (3d ed. 2019 update) ..................................17

## PRELIMINARY STATEMENT

This case is the latest example of activist investors turning to courts in an attempt to circumvent and rewrite the express terms of a bargain. Plaintiffs purport to represent a putative class of former common unitholders in Teekay Offshore Partners L.P. ("TKO" or the "Partnership") seeking to set aside the terms of a successful merger.[1] To do so, Plaintiffs seek to manufacture claims over the course of a 69-page consolidated class action complaint (the "CAC") based on unsupported (and unsupportable) allegations attacking the merger as "tainted." This effort falls flat. In reality, a special committee of disinterested directors approved the merger after more than four months of negotiations in consultation with independent financial and legal advisors and in accordance with the limited partnership agreement governing the Partnership (the "LPA").[2] Because the law does not provide a cause of action to plaintiffs that in hindsight dislike the bargain they struck, it is unsurprising that Plaintiffs are unable to plead factual allegations stating a viable claim under any cognizable theory of law. Accordingly, Brookfield Asset Management, Inc. ("BAM") and Brookfield Business Partners L.P. ("BBP"), together with individual defendants Jim Reid, Denis Turcotte, Gregory Morrison, Walter Weathers, and Craig Laurie (collectively, the "Brookfield Directors," and, along with BAM and BBP, the "Brookfield Defendants"), respectfully submit this brief in support of their motion to dismiss the amended complaint pursuant to Fed. R. Civ. P., Rules 12(b)(2) and 12(b)(6). The Brookfield Defendants also join in the arguments made in the Memorandum of Support of the Teekay Defendants' Motion to Dismiss, which are hereby incorporated by reference.[3]

---

[1] "Plaintiffs" is used herein to refer to J. Deal Partnership I, L.P., Noster Capital Master Fund, Aquamarine Master Fund LP, Steven A. Monosson, and Mark Whiting. For the convenience of the Court, a table of defined terms is attached hereto as Appendix A.

[2] A copy of the LPA is attached as Exhibit 1 to the Declaration of Matthew Solum ("Decl.").

[3] The "Teekay Defendants" consist of Defendants Teekay Offshore Partners, L.P., Teekay Offshore GP, LLC, Ian Craig, William Utt, Kenneth Hvid, David Lemmon, and Bill Transier.

## BACKGROUND

### A.    The Partnership and Its Deteriorating Business.

TKO is a Marshall Islands limited partnership headquartered in Bermuda that was formed in August 2006. (CAC ¶¶ 20, 74.) TKO provides marine transportation, oil production, and other critical infrastructure services through its subsidiaries to the international offshore oil industry, with a focus on the deep-water offshore oil regions of the North Sea, Brazil, and the eastern coast of Canada. (CAC ¶¶ 20, 75-76.) Due to the complexity of the industry, maintaining these operations is enormously expensive and capital intensive as even a single vessel can cost billions of dollars to build. (CAC ¶ 78.) Further, TKO's revenues depend in large part on long-term, fixed-rate contracts with a small number of international petroleum producers, and TKO historically relied on its former parent, Teekay Corporation, to source those relationships. (CAC ¶ 80.)

Beginning in mid-2014, the global market for crude oil entered into a tailspin as the price of crude oil fell by 72% between then and 2016. (CAC ¶ 86; MC ¶ 47.)[4] At the same time, TKO was facing increased competition due to the expansion of shale fracking in the United States. (MC ¶ 47.) This confluence of factors caused TKO to experience a steep drop in market capitalization between 2014 and 2016 and a cash deficit of approximately $819 million in 2017. (CAC ¶ 82; MC ¶¶ 2, 47.) To make up the shortfall, TKO turned to high-yield debt and new equity issuances, burdening itself with an additional $5 billion in capital obligations. (MC ¶ 47.) As poor market conditions continued, TKO warned that it would be difficult to access capital and that it was shifting its strategy to conserve cash to fund its operations and service debt.[5] Consequently, the market price of TKO's outstanding common units (the "Common Units") steadily declined

---

[4]    The term "MC" is used herein to refer to the original complaint filed in *Monosson et al. v. Teekay Offshore P'ers L.P. et al.*, Case No. 1:19-cv-07522 (S.D.N.Y. Aug. 12, 2019) (Dkt. No. 1).

[5]    Decl. Ex. 2, Teekay Offshore Partners L.P., Annual Report (Form 20-F) (Apr. 12, 2017).

from a high of $36.85 per unit on June 27, 2014 to $2.58 per unit by July 26, 2017.[6]

B.    **Brookfield Provides Financial Support and Acquires a Majority in TKO.**

On July 26, 2017, TKO, Teekay Corporation, and certain affiliates and subsidiaries of BAM and/or BBP (collectively, the "Brookfield Group") announced an agreement to provide TKO with necessary financing. The agreement provided, *inter alia*, that the Brookfield Group would pay $610 million to TKO in exchange for 59.5% of the Common Units, a 49.0% voting interest in the general partner of TKO, Teekay Offshore GP L.L.C. ("TKOGP"), and an option to purchase an additional 2.0% voting interest.[7] This agreement was conditioned upon Teekay Corporation injecting a further $30 million of cash into TKO in exchange for additional Common Units, and TKO taking a number of steps to improve its financial condition, including retiring and/or paying down expensive debt, reorganizing its remaining existing debt and capital structure, reorganizing its shuttle tanker business to improve its financing capabilities within this business line, and reducing its quarterly dividend from $0.11 to $0.01 per Common Unit to conserve cash for its operations.[8] (CAC ¶¶ 3, 4, 98-100.)

After the transaction between Teekay Corporation, TKO, and the Brookfield Group closed in September 2017, TKO continued to struggle despite the injection of new funds and the implementation of reforms. At the end of fiscal year 2017, TKO's net cash flow from operating activities had decreased by $119.1 million, it had a working capital deficit of $540.5 million, and it anticipated taking on an additional $610.0 million in debt to fund its commitments.[9]

On July 3, 2018, TKO disclosed that Brookfield TOGP had exercised its option to acquire

---

6    Decl. Ex. 3, Table of Common Unit Market Prices from May 30, 2014 through July 31, 2017.
7    The TKO interests were held by Brookfield TK TOLP L.P. ("Brookfield TOLP"), and the TKOGP interests were held by Brookfield TK TOGP L.P. ("Brookfield TOGP"), both of which are indirectly managed by Brookfield. *See, e.g.*, Decl. Ex. 4, Teekay Offshore Partners L.P., Information Statement (Schedule 13E3/A Ex. (a)(1)) 87-89 (Nov. 21, 2019) (the "Information Statement"); Declaration of Ryan Szainwald ("BAM Decl.") ¶¶ 7, 15.
8    Decl. Ex. 5, Teekay Offshore Partners L.P., Report of Foreign Private Issuer (Form 6-K) (Aug. 1, 2017).
9    Decl. Ex. 6, Teekay Offshore Partners L.P., Annual Report (Form 20-F) 66 (Mar. 21, 2018).

an additional 2.0% voting interest in TKOGP and now held a 51.0% voting interest overall.[10] While TKO's financial condition improved somewhat over fiscal year 2018, it continued to face difficulties. By the end of the fiscal year, TKO's net cash flow from operating activities had decreased by an additional $24.6 million, it had a working capital deficit of $487.6 million, and it had committed capital expenditures totaling $786.1 million.[11] As such, TKO again announced that it intended to take on more debt to remain liquid and satisfy its contractual obligations.[12] In furtherance of Teekay Corporation's stated strategy of simplifying its holdings and focusing primarily on its core gas and tanker businesses, on May 8, 2019, Teekay Corporation sold its remaining equity and debt interests in TKO and TKOGP to Brookfield TOLP and Brookfield TOGP, respectively. Consequently, BAM indirectly held 73.3% of the outstanding Common Units and a 100.0% interest in TKOGP. (CAC ¶¶ 115-119.) As such, if BAM acquired an additional 6.7% of the Common Units, it had the contractual right under the LPA to take TKO private.[13]

### C. The Merger with TKO.

On Friday, May 17, 2019, the Brookfield Group delivered a non-binding offer to purchase the remaining publicly held Common Units at $1.05 per unit (the "May 17 Merger Offer").[14] The next Monday, the standing Conflicts Committee—then consisting of Defendants Craig, Lemmon, and Transier—met with the Board and TKO's management to discuss forming a special committee.[15] TKO then issued a press release disclosing the May 17 Merger Offer, noting that a special Conflicts Committee of disinterested directors would be formed to evaluate the proposal.[16]

[10]   Decl. Ex. 7, Teekay Offshore Partners L.P., Report of Foreign Private Issuer (Form 6-K) (July 3, 2018).
[11]   Decl. Ex. 8, Teekay Offshore Partners L.P., Annual Report (Form 20-F) 61-62 (Feb. 28, 2019).
[12]   *Id.* at 62.
[13]   *See* Decl. Ex. 1, LPA § 15.1(a).
[14]   CAC ¶¶ 87-91; Decl. Ex. 9, Teekay Offshore Partners L.P., Statement of Acquisition of Beneficial Ownership (Schedule 13D/A) Ex. 1 (May 20, 2019).
[15]   *Id.*
[16]   Decl. Ex. 10, Press Release, Teekay Offshore Partners L.P., Teekay Offshore Partners Receives Offer from Brookfield (May 20, 2019).

On May 22, 2019, the Conflicts Committee retained respected legal counsel, Potter Anderson & Corroon LLP ("Potter"), to advise it on how to proceed.[17] The Conflicts Committee then convened a meeting to review its membership requirements under the LPA with the benefit of legal advice. At that meeting on May 27, 2019, the Committee determined that Defendants Utt and Transier would resign from the Conflicts Committee with immediate effect. (CAC ¶ 166.) The Conflicts Committee then retained Evercore Group L.L.C. ("Evercore") as its financial advisor on May 29, 2019.[18] On May 31, 2019, the Board adopted a resolution reconstituting the Conflicts Committee and empowering the new Conflicts Committee to evaluate and negotiate the May 17 Merger Offer.[19]

Over the next **four months**, a Conflicts Committee comprised solely of disinterested directors, acting with the advice and assistance of Potter and Evercore, negotiated the terms of the proposed merger with the Brookfield Group.[20] Over the course of multiple proposals and rounds of negotiation, eventually the Brookfield Group agreed to substantially improve upon its initial offer.[21] In particular, the Brookfield Group increased its cash offer price from $1.05 to $1.55 per Common Unit, granted limited partners an option to swap their Common Units for interests in the surviving entity in lieu of cash, and agreed to reimburse TKO for certain of its expenses relating to the proposed merger.[22] Once the Conflicts Committee received a fairness opinion from Evercore and deliberated, it unanimously determined to grant Special Approval for the Merger on September 30, 2019.[23] As a result, limited partners who chose the cash option received a premium

---

[17]    Potter is both the oldest law firm in Delaware and one of the oldest law firms in the United States. It has garnered awards as a Delaware powerhouse, and has provided legal counsel to a "Who's Who" of Fortune 500 companies. *See* Decl. Ex. 11, Potter Profile.
[18]    Information Statement at 18.
[19]    *Id.* at 19.
[20]    *Id.* at 19-23.
[21]    *Id.* at 23.
[22]    *Id.*
[23]    *Id.* at 27.

of 33.6% relative to the $1.16 closing price per Common Unit on May 17, 2019—the last date before the news broke that Brookfield had made its initial offer. (CAC ¶ 127.) The transaction between TKO and the Brookfield Group closed on January 22, 2020 (the "Merger").

## ARGUMENT

The CAC requires dismissal on numerous grounds. ***First***, this Court lacks personal jurisdiction over the Brookfield Defendants. (*See* Argument Part I.) ***Second***, Plaintiffs' breach of contract claims fail because the Brookfield Defendants do not owe the obligations Plaintiffs seek to enforce, and none of the conduct at issue breached the LPA. (*See* Argument Part II.A.) ***Third***, Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing (the "implied covenant") is duplicative, cannot be asserted against the Brookfield Defendants, and improperly attempts to reimpose common law fiduciary duties that were eliminated by contract. (*See* Argument Part II.B.) ***Fourth***, Plaintiffs' breach of fiduciary duty claims are duplicative and inappropriate under Delaware law. (*See* Argument Part II.C.) ***Finally***, because there is no underlying breach of the LPA and the Brookfield Defendants' conduct was justified in any event, Plaintiffs' tortious interference claim fails as well. (*See* Argument Part II.D.)

## I. THIS COURT LACKS PERSONAL JURISDICTION.

Plaintiffs fail to allege facts sufficient to establish personal jurisdiction over the Brookfield Defendants. First, Plaintiffs cannot establish specific jurisdiction over the Brookfield Defendants under New York's long-arm statute. (*See* Argument Part I.A.) Second, Plaintiffs lack standing to enforce forum selection provisions in the limited partnership agreement for TKOGP (the "GP Agreement") or Equity Commitment Letter. (*See* Argument Part II.A.)

## A. There Is No Basis for Exercising Jurisdiction as a Matter of Law.

A court may exercise either general or specific personal jurisdiction.[24] Plaintiffs cannot establish general jurisdiction because none of the Brookfield Defendants are at home in New York.[25] It is therefore Plaintiffs' burden to establish specific jurisdiction.[26] The Court may resolve a Rule 12(b)(2) motion based on pleadings and affidavits,[27] but is not required to "draw argumentative inferences in [Plaintiffs'] favor,"[28] accept "legal conclusion[s] couched as [] factual allegation[s],"[29] or credit conclusory assertions.[30] To meet their burden, Plaintiffs must plead facts with specificity showing that exercising specific jurisdiction is both appropriate under New York's long-arm statute and consistent with Due Process.[31] Plaintiffs did not (and cannot) meet this burden, and this action must be dismissed under Rule 12(b)(2).

At the outset, it should be emphasized that—except for Defendant Craig Laurie—Plaintiffs do not allege any non-conclusory facts that any of the Brookfield Directors had contacts with New York.[32] With respect to Mr. Laurie, Plaintiffs only allege that he maintains his principal office in

---

[24] *Bristol-Myers Squibb Co. v. Sup. Ct. of Cal., San Francisco Cty.*, 137 S. Ct. 1773, 1779-80 (2017). Unless otherwise indicated herein, all bold-print emphasis is added, modifications in the original are adopted, and all footnotes, international quotation marks, and citations are omitted.

[25] The "paradigm forum" for exercising general jurisdiction over an individual is their "domicile." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011); *see also Sadesky v. Liberty Chevrolet, Inc.*, Case No. 04-cv-1894, 2005 WL 1026326, at *2 (S.D.N.Y. May 3, 2005) ("Domicile involves two elements: the party's physical presence in the state, and the intent to remain in the state indefinitely."). None of the Brookfield Directors are alleged to reside or be domiciled in New York. *See* CAC ¶¶ 25, 27-29, 31, 40. In turn, general jurisdiction exists over a corporation in those jurisdictions where it is "at home," *Goodyear*, 564 U.S. at 919, which typically means the state in which it is incorporated and/or maintains its principal place of business, *see Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014); *Frank v. P N K (Lake Charles) L.L.C.*, 947 F.3d 331, 337 n.10 (5th Cir. 2020) (explaining that courts have applied the same test to limited partnerships). Because BAM and BBP are only "at home" in Canada and Bermuda, respectively, New York lacks general jurisdiction. *See* CAC ¶¶ 33-34.

[26] *Chassman v. Bezzabeh*, Case No. 1:15-cv-4869, 2016 WL 7174669, at *1 (S.D.N.Y. Dec. 7, 2016).

[27] *Sullivan v. Walker Constr., Inc.*, Case No. 18-cv-09870, 2019 WL 2008882, at *1 (S.D.N.Y. May 7, 2019); *Antares Aircraft L.P. v. Total C.F.P.*, Case No. 90-cv-5003, 1991 WL 19997, at *2 (S.D.N.Y. Feb. 7, 1991), *aff'd*, 948 F.2d 1275 (2d Cir. 1991).

[28] *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 507 (2d Cir. 1994).

[29] *Jazini v. Nissan Motor Co., Ltd.*, 148 F.3d 181, 185 (2d Cir. 1998).

[30] *Cont'l Indus. Grp., Inc. v. Equate Petrochem. Co.*, 586 F. App'x 768, 769 (2d Cir. 2014); *Jazini*, 148 F.3d at 185 (affirming dismissal where allegations "lack[ed] the factual specificity necessary to confer jurisdiction").

[31] *See, e.g.*, *In re Del Valle Ruiz*, 342 F. Supp. 3d 448, 458 (S.D.N.Y. 2018), *aff'd*, 939 F.3d 520 (2d Cir. 2019); *see also Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 242 (2d Cir. 2007).

[32] The only allegations even mentioning the Brookfield Directors are found in CAC ¶¶ 25, 27-29, 31, 40, 45 and 95.

New York, but they do not contend that his work there has any connection to their claims. (CAC ¶¶ 25, 45.) To the extent that Plaintiffs assert jurisdiction over the Brookfield Directors as members of the Board, Plaintiffs merely allege that TKOGP's affairs are "global in scope," which is insufficient to impute any forum-related contacts to the Brookfield Directors. (CAC ¶ 51.) Thus, Plaintiffs have not articulated any basis for exercising general or specific jurisdiction over the Brookfield Directors, and the argument below focuses solely on BAM and BBP.

Plaintiffs rely on conclusory allegations entirely shorn of any factual support to attempt to assert specific jurisdiction over BAM and BBP.[33] These allegations—discussed in more detail below—appear aimed at establishing jurisdiction under CPLR § 302(a)(1). To invoke that provision, Plaintiffs must (1) show that BAM and BBP each "transacted business [in New York] in such a way that it constitute[d] purposeful activity" and (2) articulate a "***substantial*** relationship" between their claims and the alleged activities.[34]

In a vain effort to meet this standard, Plaintiffs advance scattershot allegations asserting attenuated (and irrelevant) contacts with New York. For example, Plaintiffs allege BAM and BBP have listed securities on the New York Stock Exchange (CAC ¶¶ 41-42), which is insufficient to transact business in New York as a matter of law.[35] Similarly, Plaintiffs allege BAM and BBP maintain a satellite office and held investor meetings in New York (CAC ¶¶ 44-45), but fail to articulate any link between those forum-related contacts and their claims, thus failing to establish specific jurisdiction with respect to those contacts.[36] Plaintiffs' only remaining theory of specific

---

[33] *E.g.*, CAC ¶¶ 45-51.

[34] *Megna v. Biocomp Labs. Inc.*, 166 F. Supp. 3d 493, 497 (S.D.N.Y. 2016).

[35] *See, e.g., Stormhale, Inc. v. Baidu.com, Inc.*, 675 F. Supp. 2d 373, 376 (S.D.N.Y. 2009) (listing and trading on a New York-based exchange is insufficient); *accord Wolfson v. Conolog Corp.*, Case No. 08-cv-3790, 2009 WL 465621, at *4 (S.D.N.Y. Feb. 25, 2009); *Poms v. Dominion Diamond Corp.*, Case No. 655733/2017, 2019 WL 2106090, at *3 (N.Y. Sup. Ct. May 15, 2019); *Transasia Commodities Ltd. v. Newlead JMEG, LLC*, Case No. 654414/2013, 2014 WL 6091958, at *4 (N.Y. Sup. Ct. Nov. 13, 2014).

[36] *AVRA Surgical Robotics, Inc. v. Gombert*, 41 F. Supp. 3d 350, 359 (S.D.N.Y. 2014) (attending board meetings and conferring with investors in New York is insufficient); *see also SPV Osus Ltd. v. UniCredit Bank Austria,*

jurisdiction is that "multiple key events in the negotiation, finalization, and execution of the Merger took place in New York," (CAC ¶ 46.) This allegation is levied against BBP alone,[37] and it ignores that the Merger closed in **Houston, Texas**, not New York.[38] Regardless, Plaintiffs also omit the critical fact that neither BBP nor BAM were parties to the Merger;[39] thus, Plaintiffs are attempting to attribute the forum-related contacts of affiliates or subsidiaries to their corporate parent. The constitutionality of this type of "alter ego" theory has been called into question,[40] but this Court need not dive into such murky waters given that Plaintiffs have not pleaded facts supporting its application.

Indeed, Plaintiffs' argument rests on two flawed lines of reasoning. First, Plaintiffs contend that unknown "representatives" of BBP discussed the Merger with Evercore, which is headquartered in New York, thus those discussions must have occurred here. (CAC ¶ 47.)[41] Second, Plaintiffs reason that the terms of the Merger were negotiated and finalized by the parties' attorneys, and some of BBP's attorneys are alleged to be based in New York, so the Merger agreement must have been negotiated and finalized in New York. (CAC ¶¶ 46, 48.)[42] But New

---

[37] Case No. 18-cv-3497, 2019 WL 1438163, at *11 (S.D.N.Y. Mar. 30, 2019) (maintaining a branch office in New York is insufficient).

[37] *Compare* CAC ¶ 46 ("Brookfield . . . coordinated, negotiated, and finalized the Merger") *with* CAC ¶ 34 (defining "Brookfield" to mean BBP). To be clear, this brief uses "Brookfield" to refer to BAM and BBP, together with its affiliates and subsidiaries, which differs from the complaint.

[38] *See* Decl. Ex. 12, Merger Agreement § 2.2 ("[T]he closing of the Merger . . . shall take place at the offices of Kirkland & Ellis LLP, 609 Main Street, Houston, Texas 77002 . . . . ").

[39] *See id.* pmbl.; *id.* § 1.1 (defining "Brookfield Affiliated Holders"); BAM Decl. ¶ 26; Declaration of Jaspreet Dehl ("BBP Decl.") ¶ 11.

[40] In *Daimler*, the Supreme Court expressed skepticism that specific jurisdiction could be based on an "alter ego" theory. 571 U.S. at 134-35. The Second Circuit has recognized and joined in this skepticism. *Sonera Holding B.V. v. Cukurova Holding A.S.*, 750 F.3d 221, 225-26 (2d Cir. 2014).

[41] In effect, Plaintiffs infer that Evercore representatives must have been physically present in New York because Evercore is headquartered there, even though Evercore maintains offices in multiple locations across the globe. *See* Decl. Ex. 13, Evercore Locations Page.

[42] Publicly available information shows that 18 of the 22 attorneys that worked on the Merger on behalf of BBP were based *outside of* New York. Decl. Ex. 14, Press Release and Attorney Webpages, Kirkland & Ellis LLP, Kirkland Counsels Brookfield on Take Private of Teekay Offshore (Oct. 1, 2019). The four attorneys based in New York focus their practice on tax and executive compensation, and their services are not implicated by Plaintiffs' claims. *Id.*

York courts have repeatedly rejected such allegations as insufficient to confer jurisdiction.[43]

Finally, even if the long-arm statute conferred jurisdiction over the Brookfield Defendants, applying the statute must also be consistent with the Due Process Clause. To meet this requirement, the Brookfield Defendants' "suit-related conduct must create a ***substantial*** connection with the forum State,"[44] Plaintiffs' claims must "'arise out of or relate to' the defendant's forum conduct," and exercising jurisdiction must be reasonable.[45] This typically requires "some sort of causal relationship between a defendant's [forum-related] contacts and ***the episode in suit***."[46] In the breach of contract setting, the Supreme Court has advised that Due Process requires:

> [A] "highly realistic" approach that recognizes that a "contract" is "ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction." It is these factors—prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing—that must be evaluated in determining whether the defendant purposefully established minimum contacts within the forum.[47]

Plaintiffs' claims arise out of purported breaches of the LPA, not the Merger Agreement. The LPA concerns a partnership that is at home in the Marshall Islands and Bermuda, is governed by Marshall Islands law, is managed by a Bermuda-based general partner, has no assets located in the United States, and largely operates in foreign waters. Plaintiffs do not allege that any prior negotiations of the LPA occurred in New York, that there are any ties between New York and the

---

[43] *See NCA Holding Corp. v. Ernestus*, Case No. 97-cv-1372, 1998 WL 388562, at *4 (S.D.N.Y. July 13, 1998) (meeting in New York "must be essential to the formation or continuance of a business relationship" to confer jurisdiction); *Kahn Lucas Lancaster, Inc. v. Lark Int'l Ltd.*, 956 F. Supp. 1131, 1136 (S.D.N.Y. 1997) (same); *see also Beacon Enters., Inc. v. Menzies*, 715 F.2d 757, 766 (2d Cir. 1983) (communicating with someone in New York insufficient); *Int'l Customs Assocs., Inc. v. Ford Motor Co.*, 893 F. Supp. 1251, 1261 (S.D.N.Y. 1995), *aff'd*, 201 F.3d 431 (2d Cir. 1999) (same); *see also Netherland Shipmortg. Corp., Ltd. v. Madias*, 717 F.2d 731, 740 (2d Cir. 1983) (retaining and consulting New York counsel insufficient to transact business); *Hastings v. Piper Aircraft Corp.*, 84 N.Y.S.2d 580, 284 (N.Y. App. Div. 1948) (same); *Poms*, 2019 WL 2106090, at *4 (same); *Transasia*, 2014 WL 6091958, at *5 (same).

[44] *Walden v. Fiore*, 571 U.S. 277, 284 (2014).

[45] *Bristol-Myers Squibb Co.*, 137 S. Ct. at 1786.

[46] *Johnson v. UBS AG*, 791 Fed. App'x 240, 243 (2d Cir. 2019) (emphasis in original); *see also SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 344 (2d Cir. 2018).

[47] *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 479 (1985).

terms of the LPA, or that the LPA "contemplated future consequences" in New York. Simply put, Plaintiffs do not allege enough to establish specific jurisdiction over the Brookfield Defendants.

### B. Plaintiffs Lack Standing to Invoke the Contractual Forum Selection Clauses.

Plaintiffs do not allege that they are direct parties to either the GP Agreement or Equity Commitment Letter. Though Plaintiffs claim to be third-party beneficiaries (CAC ¶¶ 55-57), each agreement contains provisions disclaiming the existence of third-party beneficiaries.[48] Under New York law, these negating clauses defeat Plaintiffs' ability to assert standing.[49]

## II. PLAINTIFFS' CLAIMS SHOULD BE DISMISSED ON THE MERITS.

### A. Counts I & II: Plaintiffs' Breach of Contract Claim Must Be Dismissed.

A federal court exercising diversity jurisdiction applies the choice-of-law rules of the state in which the court sits.[50] Where a contract contains a choice-of-law provision, that law generally governs breach of contract claims.[51] Counts I and II assert breaches of the LPA, which includes a choice-of-law provision selecting Marshall Islands law and is subject to the Marshall Islands Limited Partnership Act (the "MILPA").[52] In turn, MILPA § 66(5) provides that its text "should be applied and construed to make the laws of the Marshall Islands . . . uniform with the laws of the State of Delaware . . . ."[53] Absent a conflict with Marshall Islands law, MILPA § 66(5) also adopts Delaware's "non-statutory law" concerning limited partnerships.

---

[48] Decl. Ex. 15, GP Agreement § 13.15 (negating existence of third-party beneficiaries); Decl. Ex. 16, Equity Commitment Letter ¶ 3 (same).

[49] *See, e.g.*, *Wilson v. Dantas*, 746 F.3d 530, 537 (2d Cir. 2014) (finding plaintiffs "do not have standing to enforce [contractual] obligations by suing as third-party beneficiaries when the contract contains a negating clause."); *Mendel v. Henry Phipps Plaza W., Inc.*, 16 A.D.3d 112, 113 (N.Y. App. Div. 2005) (same); *Nepco Forged Prods., Inc. v. Consol. Edison Co. of N.Y., Inc.*, 470 N.Y.S.2d 680, 681 (N.Y. App. Div. 1984) (same). The Brookfield Defendants are unaware of any conflict necessitating a choice-of-law analysis on this point.

[50] *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941).

[51] *Cargill, Inc. v. Charles Kowsky Res., Inc.*, 949 F.2d 51, 56 (2d Cir. 1991).

[52] *See* Decl. Ex. 1, LPA § 17.8 (adopting Marshall Islands law); *id.* §§ 2.1, 1.1 (recognizing that the MILPA governs).

[53] Decl. Ex. 17, MILPA.

1. <u>The Brookfield Defendants Cannot Breach the LPA</u>.

In Counts I and II, Plaintiffs assert claims for breach of contract against the Brookfield Defendants. To prevail on a breach of contract claim, Plaintiffs must show "1) a contractual obligation; 2) a breach of that obligation by the defendant; and 3) a resulting damage to [Plaintiffs]."[54] "It is hornbook law that, ordinarily, only parties to a contract may be liable for breach of that contract,"[55] and it is TKOGP—not the Brookfield Defendants—that was Plaintiffs' counterparty to the LPA.[56] Even if the Brookfield Defendants are parties to the LPA as limited partners, they "did not owe the contractual obligations [of TKOGP] that the Complaint seeks to enforce."[57] Under like circumstances, Delaware courts routinely dismiss breach of contract claims.[58] Accordingly, Counts I and II must be dismissed.

2. <u>The Merger Received Special Approval</u>.

Because the Merger received Special Approval under LPA § 7.9(a)(i), there can be no breach of contract by either TKOGP or the Brookfield Defendants. LPA § 7.9(a) provides that, "whenever a potential conflict of interest exists or arises," then:

> any resolution or course of action by [TKOGP] or its Affiliates in respect of such conflict of interest shall be permitted and deemed approved by all Partners, and ***shall not constitute a breach of [the] Agreement, . . . or of any duty stated or implied by law or equity***, if the resolution or course of action in respect of such conflict of interest is (i) approved by Special Approval….

There are only two prerequisites for Special Approval: (1) a majority of the Conflicts Committee

---

[54] *H-M Wexford LLC v. Encorp, Inc.*, 832 A.2d 129, 140 (Del. Ch. 2003); *see also Black v. Anheuser-Busch In Bev*, 220 F. Supp. 3d 443, 447 (S.D.N.Y. 2016) (same).

[55] *Wenske v. Blue Bell Creameries, Inc.*, C.A. No. 0699, 2018 WL 5994971, at *3 (Del. Ch. Nov. 13, 2018); *see also Vichi v. Koninklijke Philips Elecs. N.V.*, 62 A.3d 26, 59 (Del. Ch. 2012); *Gotham Partners, L.P. v. Hallwood Realty Partners, L.P.*, 817 A.2d 160, 172 (Del. 2002) ("*Gotham III*").

[56] *See* Decl. Ex. 1, LPA pmbl. Teekay Holdings Limited is also a party to the LPA, but only with respect to LPA § 16.5(b), which is not relevant here.

[57] *In re Kinder Morgan*, 2015 WL 4975270, at *5.

[58] *E.g.*, *Wenske*, 2018 WL 5994971, at *3; *In re Kinder Morgan, Inc. Corp. Reorg. Litig.*, C.A. No. 10093, 2015 WL 4975270, at *5 (Del. Ch. Aug. 20, 2015), *aff'd sub nom. The Haynes Family Tr. v. Kinder Morgan G.P., Inc.*, 135 A.3d 76 (Table) (Del. 2016); *Allen v. El Paso Pipeline GP Co., L.L.C.*, 113 A.3d 167, 178 (Del. Ch. 2014).

must approve the transaction; and (2) the Committee's members must be disinterested.[59]

Here, Plaintiffs concede that the Merger received Special Approval on September 30, 2019. (CAC ¶ 195.) There is no dispute as to whether the two members serving on the Conflicts Committee at that time—Defendants Lemmon and Craig—met the independence criteria. (CAC ¶ 159.) Plaintiffs do not (and cannot) allege that any material negotiations or developments occurred in connection with the Merger prior to May 27, 2019, when the Conflicts Committee was reconstituted to consist solely of Lemmon and Craig. Since the Conflicts Committee was validly constituted at all relevant times, Plaintiffs cannot assert a breach of LPA § 7.9(a). In sum, the Special Approval was valid and effective and Plaintiffs' claim fails.

### 3. There Was No Breach of LPA § 7.9(b).

*First*, Plaintiffs do *not* allege that the Brookfield Defendants breached the LPA. Though Plaintiffs allege the Brookfield Defendants "cause[d]" and "directed" TKOGP to breach (CAC ¶¶ 216; 239(e)), they do not plead any factual allegations in support or identify any independent conduct by the Brookfield Defendants. To the extent that Plaintiffs are trying to hold BAM and BBP liable for a putative breach by TKOGP, "[i]t is a general principle of corporate law deeply ingrained in our economic and legal systems that a parent corporation . . . is not liable for the acts of its subsidiaries."[60] Thus, to hold BAM and BBP liable for TKOGP's putative breaches of the LPA, Plaintiffs must pierce the corporate veil. "When New York courts [sitting in diversity] are asked to pierce the corporate veil against a defendant's alter egos, they look to the law of the state where the defendant is incorporated."[61] "Because a corporation is a creature of state law whose primary purpose is to insulate shareholders from legal liability, the state of incorporation

---

[59]  Decl. Ex. 1, LPA § 1.1 (definitions of "Conflicts Committee" and "Special Approval").
[60]  *United States v. Bestfoods*, 524 U.S. 51, 61 (1998); *see also Wenske*, 2018 WL 5994971, at *6 & nn.44-45
[61]  *Tianbo Huang v. iTV Media, Inc.*, 13 F. Supp. 3d 246, 257 (E.D.N.Y. 2014) (citing *Kalb, Voorhis & Co. v. Am. Fin. Corp.*, 8 F.3d 130, 132 (2d Cir. 1993)).

has the greater interest in determining when and if that insulation is to be stripped away."[62]

Here, BBP is organized under the laws of Bermuda, which generally follows English law.[63] In *In re Tyson*, the court provided a thorough survey of the English law on veil piercing.[64] Several courts have since relied on *Tyson* to detect differences between English and New York law on the subject.[65] Unlike New York law, English law only permits the corporate veil to be pierced if the subsidiary or "sham" entity is created ***after*** the event giving rise to liability has occurred.[66] This conflicts with New York law and necessitates the application of English law.[67] Yet Plaintiffs did not (and cannot) plead facts meeting the requirements for veil piercing under English law.

In turn, BAM is incorporated in Canada. The laws of Canada and New York do not appear to conflict on veil piercing. Under New York law, Plaintiffs must establish that "(1) the [Brookfield Defendants] exercised complete domination of the [Partnership] in respect to the transaction attacked; and (2) such domination was used to commit a fraud or wrong against the plaintiff which resulted in plaintiff's injury."[68] But "in New York as elsewhere, a simple breach of contract, without more, does not constitute a fraud or wrong warranting the piercing of the corporate veil."[69] As the CAC hinges solely on purported breaches of contract, Plaintiffs cannot state a claim against the Brookfield Defendants. Further, under the express terms of the LPA, the Brookfield

---

[62]  *Soviet Pan Am Travel Effort v. Travel Comm., Inc.*, 756 F. Supp. 126, 131 (S.D.N.Y. 1991).

[63]  Decl. Ex. 18, Brookfield Business Partners L.P., Annual Report (Form 20-F) (Feb. 28, 2017); *Tyco Int'l Ltd. v. Walsh*, 455 Fed. App'x 55, 57 n.2 (2d Cir. 2012) ("Bermuda is a British overseas territory that, for the most part, follows English law.").

[64]  433 B.R. 68, 79-90 (Bankr. S.D.N.Y. 2010).

[65]  *E.g.*, *Tianbo Huang*, 13 F. Supp. 3d at 258; *In re Optimal U.S. Litig.*, Case No. 10-cv-4095, 2011 WL 4908745, at *3 (S.D.N.Y. Oct. 14, 2011).

[66]  *Id.* at *3; *Tianbo Huang*, 13 F. Supp. 3d at 258.

[67]  *Id.* at 257 n.4 (rejecting the plaintiff's argument that New York and English law were equivalent on the issue and noting that "[t]he temporal requirement most clearly distinguishes New York from English law"); *Optimal U.S. Litig.*, 2011 WL 4908745, at *3 (same).

[68]  *Am. Federated Title Corp. v. GFI Mgmt. Servs., Inc.*, 716 Fed. App'x 23, 27-28 (2d Cir. 2017).

[69]  *Id.* at 28.

14

Defendants cannot be treated as exercising "control" over the Partnership.[70]

**Second**, even if the Brookfield Defendants could be held liable, Plaintiffs do not allege a breach of the contractually defined obligation to act in "good faith." Pursuant to LPA § 7.10(b), TKOGP (and, by extension, the Conflicts Committee) is "conclusively presumed" to have acted in good faith whenever it takes or declines to take an action "in reliance upon the advice or opinion" of a qualified expert, provided that TKOGP "reasonably believes [such matters] to be within such Person's professional or expert competence . . . ." Because the Merger was approved at least partially in reliance on the fairness opinion provided by Evercore,[71] Plaintiffs cannot state a claim.

Even if LPA § 7.10(b) did not apply, Plaintiffs would still fail to state a claim as LPA § 7.9(e) eliminates all common law fiduciary duties owed by TKOGP or its Indemnitees, "[e]xcept as expressly set forth in [the] Agreement." Likewise, LPA § 7.8(a) provides that "no Indemnitee shall be liable for monetary damages to … the Limited Partners" absent bad faith, fraud, or willful misconduct. And LPA § 1.1 defines the term "Indemnitee" to include "Affiliates" of TKOGP, which Plaintiffs allege includes the Brookfield Defendants.[72] Thus, the LPA eliminates all common law fiduciary duties and replaces them with contractual obligations.

In turn, LPA § 7.9(b) defines "good faith" to obligate TKOGP to reasonably believe that its "determination or other action is in the best interests of **the Partnership**"—not Limited Partners alone—and even eliminates that obligation where the "context otherwise requires." As a matter of Delaware law, this focus on "the best interests of the Partnership" means that the "Conflicts

---

[70] Decl. Ex. 1, LPA § 3.2 (providing that directors, officers, and affiliates do not exercise control over TKO by acting in their individual capacities); *see also* CAC ¶ 58 ("[TKOGP] makes all decisions for the Partnership . . . .").

[71] *See* Information Statement at 37 ("At a meeting of the Conflicts Committee held on September 30, 2019, Evercore rendered its opinion to the Conflicts Committee . . . .").

[72] The term "Affiliate" is defined to mean, "with respect to any Person, any other Person that directly or indirectly . . . controls, is controlled by or is under common control with, the Person in question." Decl. Ex. 1, LPA § 1.1.

Committee has discretion to consider the full range of entity constituencies, including but not limited to employees, creditors, suppliers, customers, the general partner," and other partners.[73] Thus, the definition of "good faith" used in LPA § 7.9(b) calls for a holistic balancing of *all* parties' interests—including those of TKOGP and its Affiliates. Plaintiffs' myopic focus on *their* interests without any consideration of others' blinded them to what is actually required to plead a breach of LPA § 7.9(b). As Plaintiffs failed to "allege facts supporting an inference that [TKOGP] had reason to believe that it acted inconsistently with *the Partnership's* best interests when approving the Merger,"[74] Count I must be dismissed.

*Finally*, if Plaintiffs are alleging that the Brookfield Defendants breached LPA § 7.9(b) because the Special Approval process was purportedly not conducted in good faith, that position has no merit. The LPA eliminates all fiduciary duties, and the provisions regarding "Special Approval" are silent as to whether good faith is required, which Delaware courts have construed to mean that the Conflicts Committee is not obligated to act in good faith as defined in the limited partnership agreement.[75] Thus, to attack the Special Approval process, Plaintiffs must show that it breached the implied covenant (which they cannot do).

## B. Count III: Plaintiffs Fail to Plead an Implied Covenant Claim.

Count III asserts a claim for breach of the implied covenant. The choice-of-law provision in the LPA dictates that Marshall Islands law applies to the implied covenant claim.[76] Pursuant to MILPA § 66(5), the Marshall Islands adopts the "non-statutory law" of Delaware, but only if it

---

73 *Allen*, 113 A.3d at 181.

74 *See Norton v. K-Sea Transp. Partners L.P.*, 67 A.3d 354, 362 (Del. 2013).

75 *See Emps. Ret. Sys. of City of St. Louis v. TC Pipelines GP, Inc.*, C.A. No. 11603, 2016 WL 2859790, at *5 (Del. Ch. May 11, 2016).

76 *E.g.*, *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 299 F. Supp. 3d 430, 596 (S.D.N.Y. 2018); *ARS Kabirwala, LP v. El Paso Karbirwala Cayman Co.*, 1:16-cv-6430, 2017 WL 3396422, at *3 (S.D.N.Y. Aug. 8, 2017); *Comprehensive Habilitation Servs., Inc. v. Commerce Funding Corp.*, Case No. 05-cv-9640, 2009 WL 935665, at *10 n.14 (S.D.N.Y. Apr. 7, 2009).

does not "conflict with any other provision of [the MILPA]."[77] The MILPA is completely silent as to whether the implied covenant is recognized under Marshall Islands law; there is no decision by a Marshall Islands court recognizing the implied covenant; and no decision recognizing a cause of action for breach of the implied covenant under Marshall Islands law could be found. This resounding silence is problematic because the implied covenant is not derived from any statute— *e.g.*, the MILPA or the Delaware Revised Uniform Limited Partnership Act ("DRULPA")—but is rather a creature of common law (*i.e.*, created by courts). As no court in the Marshall Islands has ever breathed life into such a creature, there is no basis for its existence under Marshall Islands law. This conflict precludes reliance on Delaware law and requires dismissal of Count III.[78]

The Court need not reach this issue, however, if Plaintiffs' claims would also fail as a matter of Delaware law. In contrast, if the Court disagrees and finds that Plaintiffs have stated a claim under Delaware law, the conflict between Marshall Islands law and Delaware law must be resolved. As noted in Fed. R. Civ. P., Rule 44.1, resolving that conflict is a pure question of law.[79] If desired, the Brookfield Defendants will enlist experts to aid the Court in resolving any foreign law issues as necessary. Regardless, under Delaware law, Plaintiffs have failed to state a claim for four reasons.

***First***, Plaintiffs' implied covenant claim is entirely duplicative of their breach of contract claim. Under Delaware law, "a party may maintain a claim for breach of the implied covenant of good faith and fair dealing only if the factual allegations underlying the implied covenant claim

---

[77] Decl. Ex. 17, MILPA.

[78] Jurisdictions differ as to the propriety of the implied covenant. English law, for example, prioritizes the freedom to contract over any implied covenant where (like here) sophisticated parties are at issue. *See, e.g., Medline Indus. Inc. v. Maersk Med. Ltd.*, 230 F. Supp. 2d 857, 864-65 (N.D. Ill. 2002). This suggests that the scope of the freedom to contract is a question of public policy, and the Marshall Islands has not articulated its views.

[79] *See also* Wright & Miller, 9A Fed. Prac. & Proc. Civ. § 2444 (3d ed. 2019 update) (explaining that courts often misconstrue foreign law as a question of fact and misunderstand the parties' respective burdens of proof).

differ from those underlying an accompanying breach of contract claim."[80] Plaintiffs allege the Brookfield Defendants breached LPA §§ 7.9(a)-(b) by causing TKOGP to approve the Merger at a price Plaintiffs find dissatisfying, but allege no distinct factual bases for the alleged breach of the implied covenant. (*See* CAC ¶¶ 205, 216-217, 221-222, 227-228.) Dismissal is thus appropriate.

**Second**, as a matter of Delaware law, "the implied covenant only binds parties to the contract."[81] As no Brookfield Defendants are parties to the LPA, the claim must be dismissed.

**Third**, the implied covenant claim fails on the merits. Plaintiffs allege that BAM and BBP breached the implied covenant by "using their control positions to manipulate the price of [TKO] units" to effect the Merger "at an unfair price." (CAC ¶ 228.) Where, as here, the LPA eliminates all fiduciary duties, the implied covenant is not a "backdoor" through which Plaintiffs can "re-introduce fiduciary review."[82] As explained in *ASB Allegiance*:

> "Fair dealing" is not akin to the fair process component of entire fairness, *i.e.*, whether the fiduciary acted fairly when engaging in the challenged transaction as measured by duties of loyalty and care whose contours are mapped out by Delaware precedents. It is rather a commitment to deal "fairly" in the sense of consistently with the terms of the parties' agreement and its purpose. Likewise "good faith" does not envision loyalty to the contractual counterparty, but rather faithfulness to the scope, purpose, and terms of the parties' contract. Both necessarily turn on the contract itself and what the parties would have agreed upon had the issue arisen when they were bargaining originally.[83]

Stated differently, the question is whether "it is clear from what was expressly agreed upon" that

---

[80] *Cent. Mortg. Co. v. Morgan Stanley Mortg. Capital Holdings. LLC*, 27 A.3d 531, 539 (Del. 2011); *see also Edinburgh Holdings, Inc. v. Educ. Affiliates, Inc.*, C.A. No. 0500, 2018 WL 2727542, at *8 (Del. Ch. June 6, 2018) (dismissing implied covenant claim as "wholly duplicative" of breach of contract claim).

[81] *Gerber v. Enter. Prods. Holdings, LLC*, 67 A.3d 400, 421 n.53 (Del. 2013) ("We reject [plaintiff's] argument that the implied covenant applies to nonparties to the contract."), *overruled in part on other grounds by Winshall v. Viacom Int'l, Inc.*, 76 A.3d 808 (Del. 2013).

[82] *In re Encore Energy Partners LP Unitholder Litig.*, C.A. No. 6347, 2012 WL 3792997, at *13 (Del. Ch. Aug. 31, 2012).

[83] *ASB Allegiance Real Estate Fund v. Scion Breckenridge Managing Member, LLC*, 50 A.3d 434, 440-41 (Del. Ch. 2012), *rev'd on other grounds* 68 A.3d 665 (Del. 2013).

the parties "would have agreed to proscribe the act later complained of . . . had they thought to negotiate with respect to that matter."[84]

Here, the conduct complained of by Plaintiffs is that the Brookfield Defendants purportedly (1) caused TKO to eliminate cash distributions (CAC ¶ 4), (2) caused TKO to "issue numerous series of notes and preferred stock" (CAC ¶ 5), and (3) purchased Common Units from Teekay Corporation (CAC ¶ 6). Each of the pleaded activities was not only necessary to the continued business of TKO but is also expressly permitted under the LPA.[85] Because the implied covenant is not "a free-floating duty . . . unattached to the underlying legal document,"[86] it "cannot be invoked where the contract itself expressly covers the subject at issue."[87] Plaintiffs therefore cannot state a claim against the Brookfield Defendants. The implied covenant simply is not a tool for "appeas[ing] a party who later wishes to rewrite a contract [that] he now believes to have been a bad deal. Parties have a right to enter into good and bad contracts, the law enforces both."[88]

***Fourth***, Plaintiffs cannot establish that the Special Approval process breached the implied covenant. Plaintiffs attempt to attack the process on four grounds: (i) the Conflicts Committee was "not validly constituted" when the May 17 Merger Offer was received (CAC ¶¶ 146, 150-151); (ii) the retention of Potter "tainted" the process (CAC ¶¶ 155, 162); (iii) the Conflicts Committee provided "periodic updates" and held "information sessions" with members of management and the Board (CAC ¶¶ 172-182); and (iv) Evercore was "conflicted" (CAC ¶¶ 163-164).

---

[84]   *Gerber*, 67 A.3d at 418.

[85]   Decl. Ex. 1, LPA §§ 1.1, 6.3, 6.4 (giving TKOGP authority over distributions of cash); *id.* § 7.1 (giving TKOGP authority over the issuance of notes and securities, as well as distributions of cash); *id.* § 7.11 (authorizing TKOGP and its Affiliates to purchase shares).

[86]   *Dunlap v. State Farm Fire & Cas. Co.*, 878 A.2d 434, 441 (Del. 2005).

[87]   *Fisk Ventures, LLC v. Segal*, C.A. No. 3017, 2008 WL 1961156, at *10 (Del. Ch. May 7, 2008); *see also Kuroda v. SPJS Holdings, L.L.C.*, 971 A.2d 872, 888-89 (Del. Ch. 2009).

[88]   *Nemec v. Shrader*, 991 A.2d 1120, 1126 (Del. 2010).

1. <u>The Conflicts Committee Was Validly Constituted</u>.

Plaintiffs allege that Defendants Bill Transier and William Utt served as members of the Conflicts Committee from May 21 through May 27, 2019 (CAC ¶ 159), that neither Transier nor Utt were independent directors (CAC ¶ 159), and that this "tainted" the Special Approval process. Yet Plaintiffs fail to plead factual allegations supporting these conclusory assertions. With respect to Mr. Utt, Plaintiffs' own allegations show that he was in fact qualified to serve on the Conflicts Committee.[89] Plaintiffs also fail to show that Mr. Transier was not independent.[90]

Even if it were assumed that neither Transier nor Utt met the independence standards, that alone does not justify invocation of the implied covenant. The Conflicts Committee was a standing committee, and needed to consult with counsel to determine whether its members were qualified to serve with respect to the Merger. Once counsel was retained and reviewed the members' qualifications, Transier and Utt resigned before *any* negotiations occurred—not due to their qualifications but to avoid even the specter of a conflict. The Board then adopted a resolution reconstituting the Conflicts Committee, eliminating the vacant seats left by Transier and Utt. The new Conflicts Committee retained an independent financial advisor, and then proceeded to negotiate the terms of the Merger for *the next four months*. It is that new Conflicts Committee that granted Special Approval, not the prior iteration with Transier and Utt as members.

---

[89] Members of the "Conflicts Committee" cannot be directors "of any Affiliate of [TKOGP]." Decl. Ex. 1, LPA § 1.1. Plaintiffs concede that Teekay Corporation sold all of its TKOGP interests prior to the May 17 Merger Offer, CAC ¶¶ 21, 116, and do not allege that it is an Affiliate of BAM or BBP. Thus, Teekay Corporation is not an Affiliate of TKOGP. Further, TKOGP cannot be its own Affiliate. Finally, the NYSE independence standards are only relevant if Mr. Utt is the "holder[ ] of any ownership interest in the Partnership Group other than Common Units," Decl. Ex. 1, LPA § 1.1. Plaintiffs do not allege this describes Mr. Utt.

[90] Plaintiffs allege that Mr. Transier is disqualified because he served as a director of a "Brookfield portfolio company," Westinghouse Electric Company ("Westinghouse"), but do not allege that Brookfield "controls" Westinghouse, or vice versa, as required to show that it is an "Affiliate." CAC ¶ 153. Again, TKOGP cannot be its own Affiliate, and Plaintiffs have not alleged enough to make the NYSE independence standards relevant.

2.      The Retention of Potter Cannot Invalidate the Special Approval Process.

Plaintiffs further contend the Conflict Committee's process breached the implied covenant because it retained Potter while Defendants Transier and Utt were still members, and Potter was purportedly conflicted because it represented an *unrelated* party in a legal action involving BAM. (CAC ¶¶ 155, 162.) Plaintiffs ignore that Potter's first act as legal counsel to the Conflicts Committee led to the immediate resignations of Transier and Utt. And Plaintiffs do not allege that Potter was beholden to Transier, Utt, or the Brookfield Defendants. Further, a law firm representing an unrelated co-defendant does not create a conflict of interest. Regardless, LPA § 7.10 provides a conclusive presumption of good faith whenever TKOGP acts on an "Opinion of Counsel," and LPA § 1.1 makes clear that such an opinion may be received from "regular counsel to [TKO] or [TKOGP] or any of its Affiliates . . . ." The parties thus agreed that the Conflicts Committee had the right to retain even conflicted legal counsel, which strongly undercuts the theory that Potter's retention breached the implied covenant in any way.

3.      Periodic Updates Do Not Breach the Implied Covenant.

Plaintiffs also assert that the Conflicts Committee's process breached the implied covenant because members of management and the Board were given "periodic updates." (CAC ¶¶ 172-182.) Although the meaning of "good faith" is different in the implied covenant setting, there is no reason to believe that the parties negotiating this LPA ever envisioned imposing greater protections than would exist under common law fiduciary duty standards. Yet the common law "does not require that special committees be segregated from sources of vital information,"[91] and Plaintiffs plead no facts remotely suggesting that updating members of management and the Board about

---

[91] *Blackmore Partners, L.P. v. Link Energy LLC*, C.A. No. 454, 2005 WL 2709639, at *7 (Del. Ch. Oct. 14, 2005) (finding participation of allegedly conflicted directors in special committee meetings insufficient to breach fiduciary duty), *abrogated on other grounds by Quadrant Structured Prods. Co., Ltd. v. Vertin*, 115 A.3d 535, 561 (Del. Ch. 2015).

the status of the Merger somehow subverted the Conflicts Committee's process.

### 4. Evercore Was Not Conflicted.

Plaintiffs argue that Evercore was allegedly conflicted since it purportedly advised a party with no connection to the Merger merely because BBP was a counterparty. (CAC ¶¶ 163-164.) Yet Plaintiffs cannot conjure a conflict through this daisy chain of irrelevant connections, and Delaware courts have rejected the existence of a conflict under more compelling theories.[92] In sum, Count II must be dismissed, and there is no need to consider LPA § 7.9(b).

### C. Counts V and VI: There Are No Fiduciary Duties under the LPA.

Counts V and VI allege breaches of fiduciary duties. Plaintiffs assert that the MILPA and DRULPA conflict, and argue that fiduciary duties cannot be eliminated by a limited partnership contract under MILPA § 66(4). (CAC ¶ 239(a).) That provision states that fiduciary duties may be "expanded or restricted," [93] while DRULPA § 17-1101(d) uses the phrase "expanded or restricted or eliminated." The question raised by Plaintiffs appears to be a matter of first impression, as no decision by a Marshall Islands court addressing the issue could be located. Looking to the rest of the statute for clarity, MILPA § 66(3) gives "maximum effect to the principle of freedom of contract," which suggests that parties are free to eliminate duties by contract.[94] This statutory construction would avoid any conflict with Delaware law on this issue.

It should also be noted that the language of the MILPA is identical to language that was used in DRULPA prior to 2004, when DRULPA was amended to add "or eliminated" after the phrase "expanded or restricted."[95] The Delaware Chancery Court indicated in dicta that the old

---

[92] *Cf. In re Martha Stewart Living Omnimedia, Inc. Stockholder Litig.*, C.A. No. 11202, 2017 WL 3568089, at *22, n.104 (Del. Ch. Aug. 18, 2017) (finding in fiduciary duty context that "financial advisor's prior dealings with **counterparty** to the proposed transaction" posed no conflict).

[93] Decl. Ex. 17, MILPA.

[94] *Id.*

[95] Decl. Ex. 19, 2004 Delaware Laws Ch. 265 (S.B. 273) (June 24, 2004).

"expanded or restricted" language permitted the elimination of fiduciary duties.[96] The 2004 amendment of DRULPA mooted the issue, but the legislature's notes stated that adding the language "or eliminated" was for purposes of "clarification."[97] In other words, the ability to "restrict" fiduciary duties *always* included the right to "eliminate" fiduciary duties. Because the MILPA was adopted after that clarification was made, it is reasonable to conclude that the Marshall Islands legislature found it redundant to add "or eliminated." Thus, for purposes of this brief, the Brookfield Defendants assume that Delaware law informs the analysis of Counts V and VI.

Here, Plaintiffs' argument is premised on the notion that LPA § 7.9(b) imposes contractual duties akin to common law fiduciary duties subjecting the Merger to "entire fairness" review. Plaintiffs reason that *Brinckerhoff v. Enbridge Energy Co., Inc.*, 159 A.3d 242, 262 (Del. 2017) construed "almost identical language" as that used in LPA § 7.9(b) in a similar way. (CAC ¶ 64.) That is incorrect. In *Brinckerhoff*, the court construed three separate provisions that not only required all transactions to be "fair and reasonable to the [p]artnership," but also clarified that "fair and reasonable" meant terms that were no less favorable than those obtained in arms-length transactions with an unrelated party within the context of similar or related transactions. 159 A.3d at 257. But the language of LPA § 7.9(b) materially departs from that at issue in *Brinckerhoff*, and its reasoning therefore has no application here. Because LPA § 7.9(e) expressly eliminates all fiduciary duties and replaces them with a contractual standard that does not require entire fairness, Count V is entirely duplicative of Count I and must be dismissed.[98] As Delaware does not

---

[96] *Sonet v. Timber Co., L.P.*, 722 A.2d 319, 322 n.6, 323 (Del. Ch. 1998) (noting the "expanded or restricted" language in DRULPA granted an "apparently broad license to enhance, reform, or even eliminate fiduciary duty protection"); *see also Gotham Partners, L.P. v. Hallwood Realty Partners, L.P.*, C.A. No. 15754, 2000 WL 1476663, at *10 (Del. Ch. Sept. 27, 2000) ("*Gotham II*") (construing the then "expanded or restricted" language in DRULPA as "expressly authoriz[ing] the elimination . . . ."), *rev'd in part on other grounds*, *Gotham III*, 817 A.2d 160.

[97] 2004 Delaware Laws Ch. 265 (S.B. 273).

[98] *Wenske v. Blue Bell Creameries, Inc.*, C.A. No. 0699, 2018 WL 3337531, at *14 (Del. Ch. July 6, 2018) (finding "breach of contractual fiduciary duties" claim was "properly characterized as a breach of contract claim").

recognize a claim for aiding and abetting a breach of contract, Count VI must also be dismissed.[99] And even if Count VI survived, Plaintiffs still fail to plead knowing participation in a breach of fiduciary duties, which is an independent basis for dismissal.[100]

### D. Count IV: Plaintiffs' Tortious Interference Claim Fails under New York Law.

The Second Circuit has recognized that choice-of-law provisions in a contract do not reach "extra-contractual causes of action," such as causes of action sounding in tort.[101] Because Count IV asserts an extra-contractual claim sounding in tort, New York courts conduct an "interest analysis" to determine the applicable law.[102] That analysis focuses on the "contacts of the parties and occurrences with each jurisdiction . . . ."[103] Here, the parties have contacts with Texas, California, Canada, Bermuda, the Cayman Islands, and the British Virgin Islands. (CAC ¶¶ 15-34.) It appears that no material conflict exists between New York law and those of the other jurisdictions, except for California, which does not require an actual breach of contract to assert a claim for tortious interference with contract.[104] Since tortious interference with contract is a conduct-regulating cause of action,[105] "the law of the jurisdiction where the tort occurred will generally apply because that jurisdiction has the greatest interest in regulating behavior within its borders."[106] Plaintiffs do not allege that any relevant conduct occurred in California, thus its laws

---

[99] *Gotham III*, 817 A.2d at 172; *Zimmerman v. Crothall*, C.A. No. 6001, 2012 WL 707238, at *19 (Del. Ch. Mar. 5, 2012). In *Allen*, the Chancery Court noted that aiding and abetting a breach of the contractual fiduciary duties *might* be an available claim in specific instances. 113 A.3d at 193-94. But *Allen* also indicated that where, as here, the limited partnership agreement expressly eliminated all common law fiduciary duties, "a claim for aiding and abetting cannot be used to expand the possible range of defendants." *Id.* at 194.

[100] *See, e.g.*, *Lee v. Pincus*, C.A. No. 8458, 2014 WL 6066108, at *13 (Del. Ch. Nov. 14, 2014) (describing knowing participation as "stringent standard" requiring inducement of the breach through, for example, "side payments").

[101] *Fin. One Pub. Co. Ltd. v. Lehman Bros. Special Fin., Inc.*, 414 F.3d 325, 334-35 (2d Cir. 2005).

[102] *Id.* at 336-37; *see also First Hill Partners, LLC v. BlueCrest Capital Mgmt Ltd.*, 52 F. Supp. 3d 625, 635 (S.D.N.Y. 2014).

[103] *Fin. One Pub. Co.*, 414 F.3d at 337.

[104] *First Hill Partners*, 52 F. Supp. 3d at 625-37; *compare Pac. Gas & Elec. Co. v. Bear Stearns & Co.*, 50 Cal. 3d 1118, 1126 (Cal. 1990) (requiring either "an actual breach *or disruption* of the contractual relationship"), *with Foster v. Churchill*, 87 N.Y.2d 744, 749-50 (N.Y. 1996) (requiring a breach of contract).

[105] *White Plains Coat & Apron Co. v. Cintas Corp., Inc.*, 460 F.3d 281, 284-85 (2d Cir. 2006).

[106] *In re Thelen LLP*, 736 F.3d 213, 220 (2d Cir. 2013). *White Plains*, 460 F.3d at 285.

should not govern. Since the Brookfield Defendants are unaware of any conflicts between New York law and the other jurisdictions at issue, Count IV should be addressed under New York law.

Under New York law, Plaintiffs must allege facts showing that BAM and BBP intentionally induced TKOGP to breach the LPA without justification, which they have not done.[107] Even if Plaintiffs had met that burden, the bare assertion that the Brookfield Defendants "caused" TKOGP to breach the LPA is conclusory.[108] Finally, because BAM and BBP sought to achieve economic goals in a lawful manner, their conduct was not without justification.[109]

## CONCLUSION

For the foregoing reasons, and those articulated Memorandum of Support of the Teekay Defendants' Motion to Dismiss, the Brookfield Defendants respectfully move this Court to dismiss the Consolidated Class Action Complaint with prejudice.

---

[107] *Wellington Shields & Co. LLC v. Breakwater Inv. Mgmt. LLC*, Case No. 14-cv-7529, 2016 WL 5414979, at *5 (S.D.N.Y. Mar. 18, 2016).

[108] CAC ¶ 235 ("By intentionally making an unfairly low offer and engaging in an unfair negotiation BAM, and [BBP] intentionally and improperly procured a breach of the Partnership Agreement without justification."); *id.* ¶ 236 ("BAM and [BBP] used their control over the Partnership and the General Partner to cause those entities to breach the Partnership Agreement.").

[109] *See Conte v. Emmons*, 895 F.3d 168, 173 (2d Cir. 2018) ("New York law, for good reason, does not allow tortious interference with contract claims to rest on conduct that is incidental to some other lawful purpose."); *Am. Protein Corp. v. AB Volvo*, 844 F.2d 56, 63 (2d Cir. 1988), *cert. denied* 488 U.S. 852 (1988); *see also White Plains Coat & Apron Co., Inc. v. Cintas Corp.*, 8 N.Y.3d 422, 426 (N.Y. 2007) (stating that a defense to a tortious interference claim exists where "defendants were significant stockholders in the breaching party's business[ and] where defendant and the breaching party had a parent-subsidiary relationship"); *Shea v. Hambro Am. Inc.*, 200 A.D.2d 371, 372 (N.Y. App. Div. 1994).

Dated: March 12, 2020

Respectfully submitted,

/s/ *Matthew Solum*
Matthew Solum, P.C.
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
Telephone:  (212) 446-5949
Facsimile:  (212) 446-4900
E-mail:  matthew.solum@kirkland.com

*Counsel for Defendants Brookfield Asset Management Inc., Brookfield Business Partners L.P., Jim Reid, Denis Turcotte, Gregory Morrison, Walter Weathers, and Craig Laurie*