**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

Case No. 19-cv-6483 (RA)

*In re Teekay Offshore Partners, L.P. Common*
*Unitholders Litigation*

**ORAL ARGUMENT REQUESTED**

## REPLY BRIEF IN SUPPORT OF DEFENDANTS BROOKFIELD ASSET MANAGEMENT INC.'S, BROOKFIELD BUSINESS PARTNERS, L.P.'S, AND THE INDIVIDUAL BROOKFIELD DEFENDANTS' MOTION TO DISMISS

## TABLE OF CONTENTS

I.    **Plaintiffs Cannot Establish Personal Jurisdiction** ........................................................ **1**

    A.    The Brookfield Defendants Do Not Satisfy CPLR 302(a)(1)................................. 1

    B.    Plaintiffs' Remaining Jurisdictional Arguments Are Equally Defunct. ................ 3

II.   **Plaintiffs' Claims Also Fail on the Merits** ............................................................... **4**

    A.    The Brookfield Defendants Cannot Breach the LPA. ........................................... 4

    B.    Plaintiffs Cannot Set Aside the Special Approval. ............................................... 5

    C.    Plaintiffs Fail to Plead That the Brookfield Defendants Acted in Bad Faith.......... 6

    D.    Plaintiffs Failed to State a Claim for Breach of the Implied Covenant. ................ 7

    E.    There Are No Fiduciary Duties under the LPA. .................................................... 8

    F.    Plaintiffs Fail to Plead Adequately Tortious Interference with Contract. .............. 9

III.  **Conclusion** ................................................................................................................. **10**

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ace Arts, LLC v. Sony/ATV Music Pub., LLC*,
    56 F. Supp. 3d 436 (S.D.N.Y. 2014)........................................................................2

*Alaska Elec. Pension Fund v. Bank of Am. Corp.*,
    175 F. Supp. 3d 44 (S.D.N.Y. 2016)........................................................................8

*Allen v. El Paso Pipeline GP Co., L.L.C.*,
    113 A.3d 167 (Del. Ch. 2014), *aff'd* No. 399, 2014, 2015 WL 803053
    (Del. Feb. 26, 2015) ............................................................................................8, 9

*Array Biopharma, Inc. v. AstraZeneca PLC*,
    Nos. 18-cv-235 (PKC), 18-cv-2445 (PKC), 2018 WL 3769971
    (S.D.N.Y. Aug. 9, 2018) ........................................................................................3

*Bandera Master Fund LP v. Boardwalk Pipeline Partners, LP*,
    No. 2018-0372-JTL, 2019 WL 4927053 (Del. Ch. Oct. 7, 2019) ....................4, 7, 8

*Brinckerhoff v. Enbridge Energy Co., Inc.*,
    159 A.3d 242 (Del. 2017) ......................................................................................9

*Cerveceria Modelo, S.A. De C.V. v. USPA Accessories LLC*,
    No. 07 Civ. 7998 (HB), 2008 WL 1710910 (S.D.N.Y. Apr. 10, 2008)..................10

*In re CVR Refining, LP Unitholder Litig.*,
    No. 2019-0062-KSJM, 2020 WL 506680 (Del. Ch. Jan. 31, 2020) ....................7, 8

*Dieckman v. Regency GP LP*,
    ,155 A.3d 358 (Del. 2017) ......................................................................................5

*Dieckman v. Regency GP LP*,
    No. 11130-CB, 2018 WL 1006558 (Del. Ch. Feb. 20, 2018)..................................7

*Dieckman v. Regency GP LP*,
    No. 11130-CB, 2019 WL 5576886 (Del. Ch. Oct. 29, 2019)..................................5

*EFG Bank AG, Cayman Branch v. AXA Equitable Life Ins. Co.*,
    309 F. Supp. 3d 89 (S.D.N.Y. 2018)........................................................................8

*Elsevier, Inc. v. Grossman*,
    77 F. Supp. 3d 331 (S.D.N.Y. 2015)........................................................................4

*EMI Christian Music Grp., Inc. v. MP3tunes, LLC*,
    844 F.3d 79 (2d Cir. 2016)......................................................................................2

*Fantis Foods, Inc. v. Standard Importing Co., Inc.*,
  49 N.Y.2d 317 (N.Y. 1980) ............................................................3

*Feeley v. NHAOCG, LLC*,
  62 A.3d 649 (Del. Ch. 2012)..........................................................9

*Ferrandino & Son, Inc. v. Wheaton Builders, Inc., LLC*,
  82 A.D.3d 1035 (2d Dep't 2011) ...................................................10

*Flood v. Synutra Int'l, Inc.*,
  195 A.3d 754 (Del. 2018) ...............................................................5

*Foster v. Churchill*,
  87 N.Y.2d 744 (N.Y. 1996) ...........................................................10

*Gerber v. Enter. Prods. Holdings, LLC*,
  67 A.3d 400 (Del. 2013), *overruled in part on other grounds*
  *Winshall v. Viacom Int'l, Inc.*, 76 A.3d 808 (Del. 2013) ...........................7

*Gotham Partners, L.P. v. Hallwood Realty Partners, L.P.*,
  817 A.2d 160 (Del. 2002) ...............................................................4

*Grant & Eisenhofer, P.A. v. Bernstein Liebhard LLP*,
  No. 14-cv-9839 (JMF), 2015 WL 1809001 (S.D.N.Y. Apr. 20, 2015) ....................8

*Havlish v. Royal Dutch Shell PLC*,
  No. 13 Civ. 7074 (GBD), 2014 WL 4828654 (S.D.N.Y. Sept. 24, 2014)................2

*Int'l Telecom., Inc. v. Generadora Eletricia del Oreinte, S.A.*,
  No. 00 Civ. 8695 (WHP), 2002 WL 1072230 (S.D.N.Y. May 28, 2002) ................3

*J.L.B. Equities, Inc. v. Ocwen Fin. Corp.*,
  131 F. Supp. 2d 544 (S.D.N.Y. 2001).............................................2

*James Cable, LLC v. Millennium Digital Media Sys., L.L.C.*,
  No. 3637-VCL, 2009 WL 1638634 (Del. Ch. June 11, 2009)................................10

*Jarolim v. Akris Inc.*,
  No. 14 Civ. 3361 (AT), 2015 WL 5821094 (S.D.N.Y. Sep. 9, 2015) ....................2

*Jazini v. Nissan Motor Co., Ltd.*,
  148 F.3d 181 (2d Cir. 1998)........................................................2

*In re Kinder Morgan, Inc. Corp. Reorg. Litig.*,
  No. 10093-VCL, 2015 WL 4975270 (Del. Ch. Aug. 20, 2015), *aff'd sub nom*
  *The Haynes Family Trust v. Kinder Morgan G.P., Inc.*, 135 A.3d 76 (Del. 2016) ...........4, 9

*Kirch v. Liberty Media Corp.*,
  449 F.3d 388 (2d Cir. 2006)........................................................10

*Masefield AG v. Colonial Oil Indus.*,
 No. 05 Civ. 2231 (PKL), 2006 WL 346178 (S.D.N.Y. Feb. 15, 2006)..................................10

*Mesirov v. Enbridge Energy Co.*,
 No. 11314-VCS, 2018 WL 4182204 (Del. Ch. Aug. 29, 2018) ...............................................4

*Mina Inv. Holdings Ltd. v. Lefkowitz*,
 184 F.R.D. 245 (S.D.N.Y. 1999) ...........................................................................................10

*MKE Holdings Ltd. v. Schwartz*,
 No. 2018-0729-SG, 2020 WL 467937 (Del. Ch. Jan. 29, 2020) ...............................................9

*NuMSP, LLC v. St. Etienne*,
 No. 20-cv-2916 (RA), 2020 WL 2614770 (S.D.N.Y. May 22, 2020) .......................................4

*O'Brien v. Nat'l Prop. Analyst Partners*,
 719 F. Supp. 222 (S.D.N.Y. 1989) ...........................................................................................2

*Paige Capital Mgmt., LLC v. Lerner Master Fund, LLC*,
 No. 5502-CS, 2011 WL 3505355 (Del. Ch. Aug. 8, 2011) .......................................................9

*Refco Grp. Ltd., LLC v. Cantor Fitzgerald, L.P.*,
 No. 13 Civ. 1654(RA), 2014 WL 2610608 (S.D.N.Y. June 10, 2014)......................................8

*Rich v. Fox News Network, LLC*,
 939 F.3d 112 (2d Cir. 2019).....................................................................................................10

*Ritchie Capital Mgmt., L.L.C. v. Costco Wholesale Corp.*,
 No. 14-cv-4819 (VSB), 2015 WL 13019620 (S.D.N.Y. Sept. 21, 2015) .................................4

*Robins v. Max Mara, U.S.A., Inc.*,
 923 F. Supp. 460 (S.D.N.Y. 1996) ..........................................................................................10

*Salladay v. Lev*,
 C.A. No. 2019-0048, 2020 WL 954032 (Del. Ch. Feb. 27, 2020) ............................................5

*U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*,
 916 F.3d 143 (2d Cir. 2019).......................................................................................................2

*White Plains Coat & Apron Co., Inc. v. Cintas Corp.*,
 8 N.Y.3d 422 (N.Y. 2007) ........................................................................................................10

*Wilson v. Dantas*,
 746 F.3d 530 (2d Cir. 2014).......................................................................................................4

*Wiwa v. Royal Dutch Petroleum Co.*,
 226 F.3d 88 (2d Cir. 2000)..........................................................................................................2

**Rules**

CPLR 302(a) ....................................................................................................................................1, 3, 4

Rule 12(b)(6)....................................................................................................................................10

Plaintiffs' case represents a desperate attempt to rewrite the terms of a contract to avoid what it actually says.[1] Plaintiffs spill considerable ink over the course of their 69-page complaint and 46-page opposition brief attempting to explain why the Merger consideration that they received was supposedly inadequate and therefore the Merger should not have been approved. In the end, it boils down to Plaintiffs' disagreement with TKOGP's business decisions, which Plaintiffs assert were intentionally designed to prime the market for a Merger. As highlighted in Defendants' opening briefs in support of their motions to dismiss, however, Plaintiffs point to no legally viable claim. In fact, Plaintiffs exclusively identify conduct expressly permitted by the LPA. Nor do Plaintiffs plead a single factual allegation suggesting that Defendants acted in bad faith. Unable to engage these arguments, Plaintiffs instead choose to ignore the vast majority of Defendants' cited precedents, distort their own allegations and the factual record, and conflate legal standards and parties to muddy the waters in the hopes that something slips by in the confusion. These efforts do not cure any of the deficiencies of the Complaint identified in Defendants' opening briefs, and Plaintiffs' claims should be dismissed with prejudice.

## I. PLAINTIFFS CANNOT ESTABLISH PERSONAL JURISDICTION

### A. The Brookfield Defendants Do Not Satisfy CPLR 302(a)(1).

Plaintiffs' core argument under CPLR 302(a)(1), that the Brookfield Defendants "transacted business" within New York, is based on a slew of irrelevant forum-related contacts.

*First*, Plaintiffs assert that BAM's and BBP's listing of securities on the NYSE creates specific jurisdiction, despite the overwhelming body of case law to the contrary,[2] and quibble that

---

[1]   Unless otherwise defined herein, all capitalized terms herein have the meanings ascribed to them in Appendix A to the Memorandum in Support of the Brookfield Defendants' Motion to Dismiss ("BD Br.").

[2]   *See* Plaintiffs' Consolidated Memorandum of Law in Opposition to Defendants' Motions to Dismiss ("Pls.' Opp."), at 12; BD Br. at 8 & n.35 (collecting cases).

such contacts can have jurisdictional significance without explaining why or how.[3] ***Second***, Plaintiffs contend that jurisdiction is appropriate because BAM and BBP allegedly "operate [a] U.S. business through a New York-based operating subsidiary," Brookfield BBP US Holdings LLC ("BBP US").[4] This was never raised in the CAC,[5] but even if it had been, operating a New York-based subsidiary with no relation to this action is simply not jurisdictionally relevant.[6] ***Third***, Plaintiffs declare—without support—that holding investor day conferences in New York for BAM or BBP shareholders confers specific jurisdiction,[7] but again fail to explain the jurisdictional relevance of this allegation.[8]

   ***Finally***, Plaintiffs contend that BAM and BBP are subject to jurisdiction here because portions of the Merger Agreement were purportedly negotiated in New York.[9] Though Plaintiffs concede that neither BAM nor BBP were parties the Merger Agreement,[10] they minimize this fact

---

[3]   Pls.' Opp. at 12 (citing *Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 97 (2d Cir. 2000) and *EMI Christian Music Grp., Inc. v. MP3tunes, LLC*, 844 F.3d 79, 98 (2d Cir. 2016)). In *Wiwa*, the Second Circuit itself acknowledged that "the prevailing caselaw accords foreign corporations substantial latitude to list their securities on New York-based stock exchanges . . . without thereby subjecting themselves to New York jurisdiction for unrelated occurrences." 226 F.3d at 97–98. In turn, in *EMI*, the defendant provided direct services to 400 customers within New York and its listing location was not part of the jurisdictional analysis. 844 F.3d at 98.

[4]   Pls.' Opp. at 12 & n.2.

[5]   The Court should disregard any new factual allegations raised in Plaintiffs' opposition brief. "[I]t is axiomatic that the Complaint cannot be amended by the briefs in opposition to a motion to dismiss." *O'Brien v. Nat'l Prop. Analyst Partners*, 719 F. Supp. 222, 229 (S.D.N.Y. 1989); *accord Ace Arts, LLC v. Sony/ATV Music Pub., LLC*, 56 F. Supp. 3d 436, 451 (S.D.N.Y. 2014).

[6]   Plaintiffs appear to be invoking the highly controversial "alter ego" theory of personal jurisdiction based on the purported contacts of a subsidiary that is not even relevant to this action. Even if this theory were to be entertained, Plaintiffs have not pleaded facts sufficient to support it. *See* BD Br. at 9 & n.40; *see also Jazini v. Nissan Motor Co., Ltd.*, 148 F.3d 181, 184–86 (2d Cir. 1998) (explaining pleading criteria for such a theory); *Havlish v. Royal Dutch Shell PLC*, No. 13 Civ. 7074 (GBD), 2014 WL 4828654, at *3 (S.D.N.Y. Sept. 24, 2014) (same); *J.L.B. Equities, Inc. v. Ocwen Fin. Corp.*, 131 F. Supp. 2d 544, 549 (S.D.N.Y. 2001) (same). Plaintiffs rely on case law where a defendant attended meetings and negotiated the relevant transaction in New York. Pls.' Opp. at 13–14; *U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*, 916 F.3d 143, 151–52 (2d Cir. 2019); *Jarolim v. Akris Inc.*, No. 14 Civ. 3361 (AT), 2015 WL 5821094, at *5 (S.D.N.Y. Sept. 9, 2015). Here, however, Plaintiffs rely on the actions of various subsidiaries and affiliates, which is not supported by their case law.

[7]   Pls.' Opp. at 12.

[8]   *See* BD Br. at 8 & n.36. Indeed, Plaintiffs concede that this action "challenges a transaction in . . . [TKO] common units," Pls.' Opp. at 12, not the securities listed on the NYSE by BAM or BBP, meetings for BAM or BBP investors, or the business operations overseen by BBP US.

[9]   Pls.' Opp. at 12–14.

[10]  *See id.* at 14; Declaration of Matthew Solum ("Decl.") Ex. 12 pmbl.

as a "mere technicality" while citing a single (inapposite) case in support.[11] Unable to explain how the Brookfield Defendants have any relevant contacts with this forum, Plaintiffs instead assert that unnamed "representatives" of unidentified "Brookfield entities" met for negotiations in New York;[12] argue that the Brookfield Defendants retained K&E attorneys based in New York while ignoring sworn declarations attesting that those attorneys were not retained by BAM or BBP;[13] and reason that the forum-related contacts of the *Conflict Committee's* financial advisor, Evercore, should be attributed to the Brookfield Defendants. Again, however, Plaintiffs fail to plead any factual allegations that would permit this Court to impute third parties' contacts to the Brookfield Defendants.

### B.   Plaintiffs' Remaining Jurisdictional Arguments Are Equally Defunct.

Grasping at straws, Plaintiffs next turn to a series of irrelevant, unsupported jurisdictional arguments. *First*, Plaintiffs invoke specific jurisdiction under CPLR 302(a)(3)(ii), which authorizes jurisdiction over a "tortious act" without New York if a nonresident injures a person or property within the state. This theory fails because Plaintiffs do not allege a "tortious act" occurring in New York,[14] and Plaintiffs cannot show that the situs of the alleged injury was New York.[15] *Second*, Plaintiffs' claims do not arise "out of the fact of ownership, use or possession of New

---

[11]   Pls.' Opp. at 14–15 (citing *Array Biopharma, Inc. v. AstraZeneca PLC*, Nos. 18-cv-235 (PKC), 18-cv-2445 (PKC), 2018 WL 3769971, at *2 (S.D.N.Y. Aug. 9, 2018) (discussing enforceability of forum-selection clauses)).

[12]   Pls.' Opp. at 13.

[13]   *See* Declaration of Ryan Szainwald ¶¶ 25–26; Declaration of Jaspreet Dehl ¶¶ 10–11; BD Br. at 9–10, 10 n.43.

[14]   *See* CAC ¶ 63 (asserting tortious interference claim against BBP and BAM alone); *see also Fantis Foods, Inc. v. Standard Importing Co., Inc.*, 49 N.Y.2d 317, 324 (N.Y. 1980) (noting that CPLR 302(a)(3) was enacted with the intention that it be "limited to a cause of action arising out of [a] tortious act") (quotation marks and citation omitted).

[15]   *Int'l Telecom., Inc. v. Generadora Eletricia del Oreinte, S.A.*, No. 00 Civ. 8695 (WHP), 2002 WL 1072230, at *2 (S.D.N.Y. May 28, 2002) (holding that situs of injury in tortious interference with contract is "the location where the defendants allegedly interfered with the contract"). The Merger Offer was made by a Bermuda corporation to a Marshall Islands corporation for consideration by the Conflict Committee, which did not include any New York-based members. CAC ¶¶ 21, 23, 26, 34, 123, 235. The Merger itself closed in Houston. BD Br. at 9. Thus, Plaintiffs have put forward no factual allegations from which it can be inferred that the situs of the alleged injury would be New York.

York realty," as they must for Plaintiffs to invoke CPLR 302(a)(4).[16] ***Third***, though Plaintiffs claim to enforce forum-selection provisions in the GP Agreement and Equity Commitment Letter, they cite no legal authority in support and fail to engage with the case law that precludes Plaintiffs from making such arguments.[17] Simply put, Plaintiffs cannot plead specific jurisdiction because it does not exist, and dismissal is appropriate.[18]

## II.    PLAINTIFFS' CLAIMS ALSO FAIL ON THE MERITS

### A.    The Brookfield Defendants Cannot Breach the LPA.

BAM and BBP did not directly hold any interests in TKO or TKOGP, and the Brookfield Defendants are not signatories to the LPA.[19] Plaintiffs rely on *Mesirov v. Enbridge Energy Co.* to argue their claims are viable because the Brookfield Defendants qualify as Affiliates, as defined in the LPA,[20] but the decision is squarely contradicted by the Delaware Supreme Court, as well as by Plaintiffs' own cited precedent.[21] As the Brookfield Defendants are not signatories to the operative contracts, and since Plaintiffs have no other argument for piercing the corporate veil,[22] Counts I and II should be dismissed with prejudice.

---

[16]    *Elsevier, Inc. v. Grossman*, 77 F. Supp. 3d 331, 346 (S.D.N.Y. 2015) (internal quotations omitted). Plaintiffs understandably dedicate little attention to this argument. *See* Pls.' Opp. at 15–16.

[17]    *See* Pls.' Opp. at 19 (arguing jurisdiction is appropriate "[g]iven how closely [the GP Agreement and Equity Commitment Letter] relate to the underlying misconduct") (citing no legal authorities). *But see Wilson v. Dantas*, 746 F.3d 530, 537 (2d Cir. 2014); *NuMSP, LLC v. St. Etienne*, No. 20-cv-2916 (RA), 2020 WL 2614770, at *12–14 (S.D.N.Y. May 22, 2020) (Abrams, J.).

[18]    Plaintiffs half-heartedly hint at wanting jurisdictional discovery, but such requests are routinely denied, as this Court prefers to avoid authorizing fishing expeditions. *See Ritchie Capital Mgmt., L.L.C. v. Costco Wholesale Corp.*, No. 14-cv-4819 (VSB), 2015 WL 13019620, at *7 (S.D.N.Y. Sept. 21, 2015).

[19]    BD Br. at 12.

[20]    No. 11314-VCS, 2018 WL 4182204, at *10 (Del. Ch. Aug. 29, 2018) (cited in Pls.' Opp. at 21 & n.9).

[21]    *See Gotham Partners, L.P. v. Hallwood Realty Partners, L.P.*, 817 A.2d 160, 172 (Del. 2002) (stating that Affiliates "cannot be held liable for breach of the Partnership Agreement because they were not parties to it"); *In re Kinder Morgan, Inc. Corp. Reorg. Litig.*, No. 10093-VCL, 2015 WL 4975270, at *5 (Del. Ch. Aug. 20, 2015) (dismissing breach of contract claim against nonparties to a contract), *aff'd sub nom The Haynes Family Trust v. Kinder Morgan G.P., Inc.*, 135 A.3d 76 (Table) (Del. 2016); *see also Bandera Master Fund LP v. Boardwalk Pipeline Partners, LP*, No. 2018-0372-JTL, 2019 WL 4927053, at *24 (Del. Ch. Oct. 7, 2019) (dismissing breach of contract claim against Affiliate because it was not a party to the limited partnership agreement) (cited in Pls.' Opp. at 23).

[22]    *See* Pls.' Opp. at 36; *see also* BD Br. at 13–16.

### B.      Plaintiffs Cannot Set Aside the Special Approval.

Plaintiffs argue that the Special Approval was invalid under a flawed reading of *Dieckman v. Regency GP LP* ("*Regency I*") and its progeny.[23] The facts and reasoning of *Regency I* are clearly distinguishable,[24] but Plaintiffs latch onto a brief passage noting that the members of a conflicts committee must be "genuinely qualified as unaffiliated with the General Partner and independent at all relevant times."[25] This argument entirely ignores that the Merger was negotiated and approved by a two-member Conflicts Committee, and Plaintiffs do not allege that either member was conflicted. Instead, Plaintiffs focus on allegations that Defendants Transier and Utt served on a prior iteration of the Conflicts Committee for the first six days of a four-month process and then resigned before any substantive negotiations began.[26] Though Plaintiffs fail to plead facts suggesting that Transier and Utt were disqualified from serving on the Conflicts Committee,[27] it would not matter if they had. In the fiduciary duty context, Delaware courts have emphasized that a special committee need only be comprised of independent and disinterested members prior to beginning substantive negotiations for the transaction at issue.[28] Plaintiffs attempt to sidestep these

---

[23]    155 A.3d 358 (Del. 2017) (cited in Pls.' Opp. at 26). Plaintiffs also place much reliance on the Delaware Chancery Court's post-reversal decision in *Dieckman v. Regency GP LP*, No. 11130-CB, 2019 WL 5576886, at *8–11 (Del. Ch. Oct. 29, 2019) ("*Regency III*"), a decision that is not ripe for appeal and has never been cited as precedent.

[24]    In *Regency I*, the plaintiff alleged that one of the two members serving on a conflict committee "began evaluating the [merger] while still a member of an affiliate's board," resigned after substantive negotiations began, and then re-joined the affiliate's board on the same day that the transaction closed. 155 A.3d at 360. Moreover, the principal holding of *Regency I* is that the general partner (not any Affiliates) breached the implied covenant by engaging "in misleading or deceptive conduct to obtain safe harbor approvals." *Id.* at 361, 365, 367–68. No such conduct is alleged here.

[25]    155 A.3d at 369 (discussed in Pls.' Opp. at 22–23, 24–25).

[26]    This materially differs from what was alleged in *Regency III*, where a conflicted director served on the special committee for five days out of a ten-day process and engaged in substantive negotiations prior to resigning from his directorship on the board of the acquiring company. 2019 WL 5576886, at *3. Further, the Chancery Court noted the director at issue may have even been conflicted for all ten days. *Id.* at *12 n.96.

[27]    *See* BD Br. at 20 nn.89–90; Memorandum in Support of the Non-Brookfield Defendants' Motion to Dismiss at 16–17.

[28]    *See Flood v. Synutra Int'l, Inc.*, 195 A.3d 754, 761 (Del. 2018); *see also Salladay v. Lev*, C.A. No. 2019-0048, 2020 WL 954032, at *10–12 (Del. Ch. Feb. 27, 2020). Plaintiffs attempt to distinguish these cases by arguing it solely concerns whether the business judgment rule applies. Pls.' Opp. at 28. This misses the point, which is that *Flood* and *Salladay* are focused on when conflicted directors or controllers must remove themselves from the transaction process, and the answer is clear: before **substantive** economic negotiations begin.

facts by arguing the Conflicts Committee took "mission-critical steps" by interviewing law firms and financial advisors before the departures of Transier and Utt, but have abandoned any pretention that the Conflict Committee's advisors were conflicted. In short, Plaintiffs cannot invalidate the Special Approval process under LPA § 7.9(a)(i), and there is no need to consider LPA § 7.9(b).

### C.     Plaintiffs Fail to Plead That the Brookfield Defendants Acted in Bad Faith.

In Count I, Plaintiffs allege that the Brookfield Defendants breached LPA § 7.9(b) by purportedly causing TKOGP to refrain from taking defensive measures such as adopting a poison pill or entering into a standstill agreement.[29] Plaintiffs cannot identify any provision of the LPA that would have authorized such measures.[30] In the alternative, Plaintiffs contend there should have been a "majority of minority" vote, which is an alternative safe harbor provision under LPA § 7.9(a)(ii)—not a requirement of good faith under LPA § 7.9(b).

Plaintiffs also argue that the Brookfield Defendants breached LPA § 7.9(b) by purportedly depressing the value of the Common Units, arguing that BBP caused TKOGP to issue notes, even though TKOGP was still under the control of Teekay Corporation at the time.[31] Plaintiffs similarly argue the issuance of preferred stock decreased the value of the Common Units, but plead no factual allegations in support, and the CAC itself notes that preferred stock is not "relevant to this litigation."[32] Further, Plaintiffs argue—without legal support—that the Brookfield Defendants

---

[29]  *See* CAC ¶¶ 122, 168, 217–218; Pls.' Opp. at 6.

[30]  *See* CAC ¶ 96 (noting that Brookfield TOGP's consent would have been required to implement a poison pill); *see also* LPA § 7.9(c) (noting TKOGP and/or its Affiliates are under no obligation to act in good faith when acting in their individual capacities); LPA § 14.2 ("[T]o the fullest extent permitted by law, the General Partner shall have no duty or obligation to consent to any merger … and may decline to do so free of any fiduciary duty or obligations whatsoever to the Partnership or any Limited Partner and, in declining to consent to a merger or consolidation, shall not be required to act in good faith or pursuant to any other standard imposed by [the] Agreement… or any other law, rule, or regulation or at equity.").

[31]  Pls.' Opp. at 33; *compare* CAC ¶ 107 (the note offering occurred in June 2018) *with* CAC ¶ 109 (Brookfield TOGP acquired a majority interest in TKOGP in July 2018).

[32]  CAC ¶ 83 n.1; *see also* LPA § 5.5(a) (authorizing TKOGP to issue Partnership Securities "without the approval of any Limited Partners"); *id.* § 5.6 (authorizing issuance of "unlimited number of Partnership Securities . . . without the approval of the Limited Partners").

breached LPA § 7.9(b) because the opening Merger Offer was too low.[33] Yet the entities that made the Merger Offer would have done so in their individual capacities pursuant to LPA § 7.9(c), in which case they were "not . . . required to act in good faith or pursuant to any standard imposed by [the] Agreement." And finally, Plaintiffs reason that TKOGP cutting dividends from $0.01 to $0.00 must have breached LPA § 7.9(b), even though Plaintiffs concede that this is expressly authorized by the LPA.[34] In contrast, Plaintiffs' cited legal authorities involved substantially different facts,[35] which only serve to underscore the deficiencies of the CAC.

### D.   Plaintiffs Failed to State a Claim for Breach of the Implied Covenant.

*First*, Plaintiffs cannot assert an implied covenant claim under Delaware law against the Brookfield Defendants because they are not signatories to the LPA.[36] In arguing otherwise, Plaintiffs again cite to *Bandera* and *CVR Refining*, which they contend "sustained implied covenant claims . . . [against] the partnership's controllers."[37] Those decisions are not only factually dissimilar,[38] but also ***dismissed*** the implied covenant claims against the "controllers"

---

[33]   Pls.' Opp. at 33.

[34]   *Id.* at 40.

[35]   In *Dieckman v. Regency GP LP*, No. 11130-CB, 2018 WL 1006558 (Del. Ch. Feb. 20, 2018) ("*Regency II*"), the controller pushed through a merger in less than a week in effort to shore up its own struggling finances with the revenues from the partnership, which had an objectively "bright future as a standalone entity." *Id.* at *3. In turn, in *In re CVR Refining, LP Unitholder Litig.*, No. 2019-0062-KSJM, 2020 WL 506680 (Del. Ch. Jan. 31, 2020), the controller manipulated the unit price downward before exercising a call right that allowed it to take the partnership private by purchasing all outstanding units at a price tied to average trading values over a fixed period. *Id.* at *8–11.

[36]   BD Br. at 18; *see also Gerber v. Enter. Prods. Holdings, LLC*, 67 A.3d 400, 412 (Del. 2013) ("Here, only Enterprise Products GP—but not its 'Affiliates' ([the alleged controllers] and the Director Defendants)—signed the LPA and became subject to the implied covenant."), *overruled in part on other grounds Winshall v. Viacom Int'l, Inc.*, 76 A.3d 808 (Del. 2013); *Bandera*, 2019 WL 4927053, at *8, *24 (finding alleged controllers were "Affiliates" under the limited partnership agreement, but nonetheless dismissing implied covenant claim against them because they were not signatories to the agreement).

[37]   Pls.' Opp. at 37.

[38]   As explained in footnote 34, *supra*, the decision in *CVR Refining* involved issuing disclosures in order to manipulate the contractual pricing formula dictating the cost at which a controller could exercise its call right. *Bandera* involves a similar fact pattern. 2019 WL 4927053 at *23–24. Neither case involved a merger or the appropriateness of the Special Approval process.

because they were not parties to the limited partnership agreements.[39] Further, Plaintiffs misplace their reliance on *Refco Grp. Ltd., LLC v. Cantor Fitzgerald, L.P.*,[40] which is inapposite.[41]

**Second**, Plaintiffs argue the implied covenant claim should not be dismissed as duplicative of their breach of contract claim because it is pleaded in the alternative.[42] This precise argument has been rejected on numerous occasions and should also be rejected here.[43]

**Finally**, Plaintiffs implicitly concede that the Marshall Islands has never recognized the implied covenant in **any** context, and the MILPA unequivocally bars looking to contradictory statutory and nonstatutory law of Delaware to interpret their corporate law.[44] The absence of the implied covenant from the nonstatutory law of the Marshall Islands presents such a conflict. But again, the Court need not reach this issue, as Plaintiffs failed to state a claim under Delaware law.

### E.      There Are No Fiduciary Duties under the LPA.

Plaintiffs have abandoned any pretense that the MILPA does not permit limited partnerships to eliminate common law fiduciary duties, which LPA § 7.9(e) expressly eliminates here. As explained in *Allen v. El Paso Pipeline GP Co., L.L.C.*, "contractual fiduciary duties" is accurately used to refer to narrow "hybrid situations" where a limited partnership agreement fails

---

[39]   *Bandera*, 2019 WL 4927053, at *24 ("As with [the claim for breach of contract], [the implied covenant claim] is dismissed as to [the alleged controller] because it is not a party to the Partnership Agreement, and only a party to a contract may be sued for breach of the implied covenant that inheres in that contract."); *CVR Refining*, 2020 WL 506680, at *16.

[40]   No. 13 Civ. 1654(RA), 2014 WL 2610608 (S.D.N.Y. June 10, 2014) (Abrams, J.); *see* Pls.' Opp. at 39–40.

[41]   Plaintiffs ignore that the Court was not analyzing an implied covenant claim and that the partnership agreement in *Refco* did not eliminate fiduciary duties. 2014 WL 2610608, at *21 n.21 ("Here, though, the LPA explicitly limits '[t]he liability of the General Partner,' rather than its fiduciary duties.") (alteration in original).

[42]   Pls.' Opp. at 38.

[43]   *E.g.*, *EFG Bank AG, Cayman Branch v. AXA Equitable Life Ins. Co.*, 309 F. Supp. 3d 89, 94 (S.D.N.Y. 2018) (dismissing implied covenant claim pleaded in the alternative as duplicative of breach of contract claim); *Alaska Elec. Pension Fund v. Bank of Am. Corp.*, 175 F. Supp. 3d 44, 63–64 (S.D.N.Y. 2016) (same); *Grant & Eisenhofer, P.A. v. Bernstein Liebhard LLP*, No. 14-cv-9839 (JMF), 2015 WL 1809001, at *4 (S.D.N.Y. Apr. 20, 2015) (same).

[44]   Pls.' Opp. at 39.

to eliminate fiduciary duties.[45] And where, as here, a limited partnership agreement unambiguously states that it eliminates all common law fiduciary duties, there are no contractual fiduciary duties.[46]

Plaintiffs ignore this reasoning and instead cite cases where the partnerships at issue did not clearly waive or eliminate fiduciary duties,[47] and otherwise argue "nearly identical language" as LPA § 7.9(b) was found to "give rise to 'a contractual fiduciary standard similar if not equivalent to entire fairness'" in *Brinckerhoff*.[48] But the contractual language in *Brinckerhoff* defined a "fair and reasonable" transaction as one that is on terms equivalent to what an unaffiliated third party might provide.[49] Equivalent language is not found in LPA § 7.9(b), which merely calls for a holistic balancing of the interests of a diverse set of stakeholders—including creditors, employees, and TKOGP.[50] Moreover, the language at issue in *Brinckerhoff* did not clearly eliminate fiduciary duties,[51] which is not true of LPA § 7.9(e).[52] Thus, absent a breach of fiduciary duty, Counts V and VI must be dismissed.

### F.  Plaintiffs Fail to Plead Adequately Tortious Interference with Contract.

Plaintiffs have likewise failed to state a claim for tortious interference with contract

---

[45]   113 A.3d 167, 193–94 (Del. Ch. 2014), *aff'd* No. 399, 2014, 2015 WL 803053 (Del. Feb. 26, 2015);; *see also MKE Holdings Ltd. v. Schwartz*, No. 2018-0729-SG, 2020 WL 467937, at *16 (Del. Ch. Jan. 29, 2020).

[46]   *El Paso Pipeline GP Co., L.L.C.*, 113 A.3d at 194.

[47]   Pls.' Opp. at 42 (citing *Feeley v. NHAOCG, LLC*, 62 A.3d 649, 670–71 (Del. Ch. 2012), then citing *Paige Capital Mgmt., LLC v. Lerner Master Fund, LLC*, No. 5502-CS, 2011 WL 3505355 (Del. Ch. Aug. 8, 2011)). Both decisions emphasized that default fiduciary duties can be eliminated by contract. *See Feeley*, 62 A.3d at 661–64; *Paige Capital Mgmt.*, 2011 WL 3505355, at *31 & n.190.

[48]   Pls.' Opp. at 43 (quoting *Brinckerhoff v. Enbridge Energy Co., Inc.*, 159 A.3d 242, 262 (Del. 2017)).

[49]   159 A.3d at 256; *see also id.* at 254 (noting that defendant was "not subject to fiduciary standards of care").

[50]   *See* LPA § 7.9(b) (defining "good faith" as a determination or action one "reasonably believe[s]" is in the "best interests of the Partnership, unless the context otherwise requires"); *compare* LPA § 7.9(a)(iii) (providing safe harbor for transactions on equivalent terms as those available from unaffiliated third parties) *with* LPA § 7.9(a)(iv) (providing safe harbor for "fair and reasonable" transactions, "taking into account the totality of the relationships between the parties involved").

[51]   159 A.3d at 253 & n.31 (questioning whether language eliminated fiduciary duties).

[52]   *See Kinder Morgan*, 2015 WL 4975270, at *5 (dismissing fiduciary duty claims where contract eliminated such duties because the "analysis is solely contractual"), *aff'd sub nom. The Haynes Family Trust*, 135 A.3d at 76 (limited partners cannot litigate "as if they were investors in a corporation, whose directors had the traditional duties of loyalty and care," where the limited partnership agreement eliminates fiduciary duties).

(Count IV). ***First***, absent any alleged breach of the LPA, Count IV must fail.[53] ***Second***, Plaintiffs fail to plead any facts suggesting that the Brookfield Defendants intentionally procured any breach of the LPA.[54] It is not sufficient to allege that some breach of contract occurred and a defendant "caused" that breach.[55] ***Third***, Plaintiffs further contradict their own case law in arguing that the economic self-interest defense is improper. Plaintiffs' own case law underscores that this is true only if there is a showing of malice,[56] and they are wrong to suggest that this defense cannot be raised at the motion to dismiss stage.[57]

## III.    CONCLUSION

For the foregoing reasons, as well as those articulated in the Brookfield Defendants' and Non-Brookfield Defendants' opening briefs in support of their motions to dismiss (which are hereby expressly incorporated by reference and preserved), the CAC should be dismissed with prejudice. The Brookfield Defendants further join in the arguments made in the Non-Brookfield Defendants' Reply in Support of Their Motion to Dismiss the Amended Consolidated Class Action Complaint.

---

[53]  *See, e.g.*, *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 401–02 (2d Cir. 2006); *Robins v. Max Mara, U.S.A., Inc.*, 923 F. Supp. 460, 468 (S.D.N.Y. 1996).

[54]  *See* Pls.' Opp. at 45. Plaintiffs appear to be under the impression that BAM is managing a fund that indirectly holds a majority interest in TKOGP is in and of itself sufficient, while citing no legal support for that position.

[55]  *See, e.g.*, *Masefield AG v. Colonial Oil Indus.*, No. 05 Civ. 2231 (PKL), 2006 WL 346178, at *4 (S.D.N.Y. Feb. 15, 2006); *Ferrandino & Son, Inc. v. Wheaton Builders, Inc., LLC*, 82 A.D.3d 1035, 1036 (2d Dep't 2011).

[56]  *See Rich v. Fox News Network, LLC*, 939 F.3d 112, 129 (2d Cir. 2019) ("The pursuit of 'economic interest' can suffice [to justify tortious interference]—'*unless there is a showing of malice or illegality*.'") (quoting *Foster v. Churchill*, 87 N.Y.2d 744, 750 (N.Y. 1996)); *see also White Plains Coat & Apron Co., Inc. v. Cintas Corp.*, 8 N.Y.3d 422, 425–26 (N.Y. 2007) (noting that the economic self-interest defense is available in tortious interference with contract actions absent "malice or illegality") (collecting cases); *James Cable, LLC v. Millennium Digital Media Sys., L.L.C.*, No. 3637-VCL, 2009 WL 1638634, at *4 n.17 (Del. Ch. June 11, 2009) (no tortious interference "unless the plaintiff pleads and proves that the affiliate sought not to achieve permissible financial goals but sought maliciously or in bad faith to injure plaintiff").

[57]  Plaintiffs' sole citation on this point is to *Cerveceria Modelo, S.A. De C.V. v. USPA Accessories LLC*, No. 07 Civ. 7998 (HB), 2008 WL 1710910, at *5 (S.D.N.Y. Apr. 10, 2008) (citing *Mina Inv. Holdings Ltd. v. Lefkowitz*, 184 F.R.D. 245, 251 (S.D.N.Y. 1999)). But *Mina* was issued in a response to a motion to consider the dismissal of a tortious interference claim under Rule 12(b)(6), denied the motion with respect to that claim, and was only summarizing the plaintiff's argument when it stated that dismissals should not occur at this stage. 184 F.R.D. at 251.

Dated:  New York, NY
        June 10, 2020

                                        Respectfully submitted,


                                        /s/ Matthew Solum
                                        Matthew Solum, P.C.
                                        KIRKLAND & ELLIS LLP
                                        601 Lexington Avenue
                                        New York, NY 10022
                                        United States
                                        Telephone: +1 212 446 4800
                                        Facsimile: +1 212 446 4900

                                        *Counsel for Defendants Brookfield Asset*
                                        *Management Inc., Brookfield Business*
                                        *Partners L.P., Jim Reid, Denis Turcotte,*
                                        *Gregory Morrison, Walter Weathers, and*
                                        *Craig Laurie*